## SUDBERRY *v.* GRAVES.

### Opinion delivered June 24, 1907.

1. PUBLIC DITCH—NOTICE.—Under Kirby's Digest, § § 1422, 1423, providing that notice of the time fixed for hearing the last report of the viewers appointed to establish a public ditch shall be given to each landowner affected by the proposed improvement, the giving of such notice is jurisdictional. (Page 347.)

2. SAME—CURATIVE ACT.—The act of May 22, 1907, providing that all defects and irregularities occurring in the organization of certain drainage districts "are hereby cured and the assessments for the location and construction of said ditch are hereby ratified and confirmed," was a valid legislative adoption of the assessments made in such districts, and cured the want of notice to landowners of the time fixed for hearing the last report of the viewers. (Page 347.)

3. APPEAL—PASSAGE OF CURATIVE ACT—COSTS.—Where an appellee secures the affirmance of the judgment appealed from by virtue of a curative act passed during the pendency of the appeal, the costs of the appeal will be adjudged against him. (Page 351.)

Appeal from Mississippi Chancery Court; *J. H. Edwards,* Special Chancellor; affirmed.

### STATEMENT BY THE COURT.

This is a suit in equity instituted by appellants to restrain the construction of a public ditch and to cancel, as clouds upon their titles, the assessments levied upon their lands to pay the costs of construction of the ditch.

At the July term, 1905, of the county court of Mississippi County a petition was presented to said court for the establishment of a drainage district to construct a public ditch in accordance with the laws of the State along the route described in the petition. The county appointed viewers, in accordance with the statute, to survey the line for the proposed ditch and to make report thereof to the court. The viewers made their report on a subsequent day, recommending the construction of the ditch along the route indicated in the report, and the court entered an order establishing the ditch and constituting the lands affected thereby or to be assessed therefor a drainage district and directing the viewers to prepare and file at the next term of the court their report of plans for the construction of the ditch, the estimated costs thereof, the list of lands that would be damaged or benefited thereby and the assessments upon each tract of land benefited by the improvement. The viewers made their final report in accordance with the direction of the court, and the same was confirmed by the court at a subsequent term thereof.

It is alleged in the complaint that the orders of the court establishing the drainage district and confirming the assessments reported by the viewers were made without the notices required by the statute having been given, and this is conceded to be true.

The chancery court, upon final hearing of the cause, dismissed the complaint for want of equity, and the plaintiffs appealed.

*D. F. Taylor,* for appellants.

*J. T. Coston,* for appellees.

McCULLOCH, J., (after stating the facts.) The statute upon which the proceedings for the establishment of the drainage

district and the construction of the public ditch are based provides that the county court of any county shall have power, upon petition of landowners, to establish drainage districts for the construction of ditches; that, upon the filing of such petition with bond, viewers shall be appointed to make preliminary survey of the line of the proposed ditch and to report whether the proposed improvement is necessary, practicable and conducive to public health, convenience, etc.; that notice of the pendency of the proceedings and report of said viewers shall be given by publication in a newspaper published in the county; that, if the county court shall find from the report in favor of making the improvement, the lands which will be affected thereby or assessed therefor shall constitute a drainage district, which shall be designated by number, and the court shall enter an order directing the viewers to go upon the proposed line of the ditch, report plans for the construction thereof and the cost thereof, and make report of all lands to be damaged or benefited thereby with separate estimates of the amount of damage or benefit to each tract or lot, and apportion the cost of the improvement in proportion to the damages or benefits which will result; and that the court "shall examine the report of the viewers and the appraisement by them made, and if it is in all things fair and just, according to the benefits, shall approve and confirm the same." The statute also provides that notice of the time fixed for hearing the last report of the viewers shall be given to each owner of land affected by the proposed improvement by personal service of summons upon owners who are residents of the county, and by publication upon owners residing without the county or owners whose places of residence are not known. The assessments, when thus levied and confirmed, are placed upon the tax books to be collected, and, if not paid according to the requirements of the statute, are enforced by action in the circuit court. Act April 23, 1903, Kirby's Digest, § § 1414-1436.

Appellants show no grounds for restraining the construction of the ditch. It does not appear that their lands have been or will be encroached upon or damaged in the construction of the ditch; hence they have no right to interfere. The only

ground for complaint, if any, is that an assessment alleged to be illegal has been levied upon the property.

The provision of the statute requiring notice to be given to the landowners of the assessments sought to be levied is mandatory, and the failure to give the notice rendered the assessment void. The provision of the statute is plain. It requires that, "upon the filing of the report of the viewers, the county clerk shall immediately set the hearing of the same for the first day of the next regular term of the county court," that summons shall be issued and served, etc., that the court shall first determine whether the required notice has been given, and when it is found that due notice has been given the court shall then "examine the report of the viewers and the appraisement by them made, and, if it is in all things fair and just," it shall be approved and confirmed. Kirby's Digest, § § 1422, 1423.

The giving of the notice is jurisdictional, and the court can not proceed until that is done. The assessments, when approved by the county court upon notice to the landowners, become final and conclusive, and it would not do to say that they were valid without the notice having been given, as required by the statute.

Since the submission of the cause in this court, the General Assembly passed an act, which was approved by the Governor on May 22, 1907, validating the organization of this and other drainage districts and the assessments levied on lands to pay the cost of locating and constructing the ditches. Section one of the act provides that "all defects and irregularities occurring in the organization of said drainage districts Nos. 3, 4, 5 and 7 in said county be, and the same are hereby, cured and the assessments for the location and construction of said ditch are hereby ratified and confirmed." Section two provides that "said assessments shall not be set aside or declared void by any court on account of any defect in the proceedings, want of jurisdiction, or for any cause whatever, and this act shall be liberally construed so as to make the lien of said assessments valid and prior to all other liens."

The Legislature has the power to enact statutes having retroactive effect curing defects in proceedings, conveyances, etc., provided that they do not disturb vested rights; and such

statutes apply to proceedings, conveyances, etc., called in question in pending suits unless excepted by the terms of the statute itself. *Sidway* v. *Lawson,* 58 Ark. 117; Gray's Lim. of Taxing Powers, § 1250.

This court has adopted the following rule stated by Judge Cooley: "If the thing wanting or which failed to be done, and which constitutes the defect in the proceedings, is something the necessity for which the Legislature might have dispensed with by prior statute, then it is not beyond the power of the Legislature to dispense with it by subsequent statute. And if the irregularity consists in doing some act, or in the mode or manner of doing some act, which the Legislature might have made immaterial by prior law, it is equally competent to make the same immaterial by a subsequent law." Cooley's Const. Lim. (7th Ed.), p. 531; *Green* v. *Abraham,* 43 Ark. 420.

On the other hand, the Legislature can not cure the omission of an act which it could not in the first place have dispensed with, nor validate a proceeding wholly void because of a failure to comply with a jurisdictional requirement. Cooley's Const. Lim. p. 530; Gray's Lim. of Taxing Powers, § 1249; Hamilton's Law of Special Assessments, § 817.

It is doubted that the Legislature could, in the first place, have delegated to the viewers and county court the power to levy the assessments for the cost of construction of the improvement without notice to the landowners (Gray's Lim. of Taxing Powers, § § 1141,1142; *Stuart* v. *Palmer,* 74 N. Y. 183; *McLaughlin* v. *Miller,* 124 N. Y. 510; *Fallbrook Irrigation Dist.* v. *Bradley,* 164 U. S. 112) ; and, being without power to dispense with notice, it could not validate assessments made in that way, if we are to treat the statute as merely a curative one.

But it is broader than that in its scope and effect. It is equivalent to a declaration that the amounts assessed by viewers and approved by the county court were proper according to the benefits to be received by each tract of land, and a legislative adoption of those amounts as a re-assessment of the proportionate part of the cost of the improvement to be paid upon those lands. The Legislature had the power, in the first instance, not only to fix the boundaries of the district but to de-

termine the cost of the improvement and to assess the cost proportionately upon the several tracts of land according to the legislative estimate or benefits, without delegating to any subordinate board or officers the duty and power of fixing the assessments. *Coffman* v. *St. Francis Drainage Dist., ante* p. 54; *Parsons* v. *District of Columbia,* 170 U. S. 45.

In other words, the Legislature could in the first place have levied the assessments itself, subject only to the right of the assessed landowner to have an arbitrary abuse of that power reviewed by the courts (*Coffman* v. *Drainage District, supra*), and it can therefore adopt as correct the assessments made by the viewers and county court, treating the act of adoption as a re-assessment of the lands by the Legislature. We see no reason why the Legislature can not, if it had the power in the first place to determine for itself the proportionate amounts to be assessed against the lands in the district, determine now that the apportionment made by the viewers and confirmed by the county court was correct and assess them against the lands. Authority is not lacking to support this view.

The expense of grading a street was, pursuant to an act of the Legislature of New York, assessed by commissioners upon land lying within a given distance on either side of the street according to what was found to be the benefits to be derived by each tract from the improvement. These assessments were held to be void by the Court of Appeals of that State because no provision was made for notice of hearing to the landowners, and the Legislature then passed another act directing that a total sum equal to the unpaid assessments, together with the proportional expense of making the assessment, be assessed against and equitably apportioned among the lots on which assessments had not been paid, and also directing that the apportionment among those lots be made by a board of commissioners after giving notice to the owners. The New York Court of Appeals and the Supreme Court of the United States held that this was a proper exercise of legislative power, and that it was not a taking of property without due process of law. *Spencer* v. *Merchant,* 100 N. Y. 585; *Spencer* v. *Merchant,* 125 U. S. 345.

The New York court, in disposing of the question, said:

"The act of 1881 determines absolutely and conclusively the amount of tax to be raised, and the property to be assessed and upon which it is to be apportioned. Each of these things was within the power of the Legislature whose action can not be reviewed in the courts upon the ground that it acted unjustly or without appropriate and adequate reason. The Legislature may commit the ascertainment of the sum to be raised and of the benefited district to commissioners, but it is not bound to do so, and may settle both questions for itself; and when it does so, its action is necessarily conclusive and beyond review. Here an improvement has been ordered and made, the expense of which might justly have been imposed upon adjacent property benefited by the change. By the act of 1881, the Legislature imposes the unpaid portion of the act and expense with the interest thereon upon that portion of the property benefited which has thus far borne none of the burden. In so doing it necessarily determines two things, viz., the amount to be realized, and the property specially benefited by the expenditure of that amount. The lands might have been benefited by the improvement, and so the legislative determination that they were, and to what amount of proportion of the cost, even if it may have been mistakenly unjust, is not open to our review."

The Supreme Court of the United States reached the same conclusion and approved the language which we have just quoted.

It is true that the statute involved in those cases differed from the statute which we have under consideration now in that it did not apportion the tax among the lots declared to be liable, but merely fixed the total amount to be paid and the property assessed, and referred the apportionment to a board of commissioners for determination. That difference between the two statutes does not, however, affect the application of the principle announced. The New York statute was a conclusive ascertainment by the Legislature of the amount of tax to be assessed and of the property to be taxed; and if it could do that much, it also had the power to adopt the assessments formerly levied by the commissioners. The power to do this follows from the power to levy the assessments directly in the first instance.

Of course, this power is exercised, as we have already stated, subject to the right of the landowners to have it reviewed by the court in the event of an arbitrary abuse thereof sufficient to amount to confiscation of property (*Coffman* v. *Drainage Dist., supra*) ; but nothing of that kind is alleged or proved in this case. It is not even alleged that the assessments are unfair or unjust, or that the property taxed will not receive a benefit from the proposed improvement proportionate to the assessments levied.

Appellants merely stand upon the proposition that the assessments were levied on these lands without notice to them, and that the same are for that reason void. Under the last enactment of the Legislature, we decide against them as to the validity of the assessments. By this statute the Legislature validated the organization of this district and, in effect, reassessed the property to be benefited.

The decree must, therefore, be affirmed, but, inasmuch as the statute in question was passed during the pendency of the appeal, the cost of appeal should be adjudged against the appellees. It is so ordered.