SHIBLEY v. FORT SMITH & VAN BUREN DISTRICT (1).

STARBIRD v. FORT SMITH & VAN BUREN DISTRICT (2).

CHASTAIN v. FORT SMITH & VAN BUREN DISTRICT (3).

SHIBLEY v. FORT SMITH & VAN BUREN DISTRICT (4).

Opinion delivered October 31, 1910.

1. COUNTY COURTS—JURISDICTION—BRIDGES.—Section 28, art. 7, Const. 1874, conferring upon county courts "exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, etc.," is not violated by Acts 1909, c. 119, authorizing parts of Sebastian and Crawford counties to be constituted as the Fort Smith and Van Buren District for the purpose of building a free bridge across the Arkansas River between Fort Smith and Van Buren, and providing that, after the bridge is constructed, the county courts of Crawford County and of the Fort Smith District of Sebastian County may take it over and maintain it as a public highway. (Page 414.)

2. LOCAL IMPROVEMENT—BRIDGE.—A public bridge, as well as a street in a city or a highway in the country, is of great benefit to the traveling public, but it may also be of special benefit to adjoining lands so as to justify special assessments thereon to defray the expense of its construction. (Page 416.)

3. SAME—AREA.—There is nothing in the Constitution which forbids the creation of an improvement district embracing parts of two counties. (Page 417.)

4. SAME—TAXATION—UNIFORMITY.—The constitutional requirement of uniformity in taxation is satisfied when assessments for local benefits are imposed with substantial or approximate equality upon all standing in like relation. (Page 418.)

5. SAME—ASSESSMENT—CONCLUSIVENESS.—Acts 1909, c. 119, § 7, providing that the assessment of benefits in the two localities upon opposite sides of the Arkansas River should "bear the same proportion to each other which the assessments of real estate in said divisions of said district bear to each other as determined by the last county assessment of said divisions of said district," is a legislative determination that the two localities will be benefited in the same proportion that their assessments

bear to each other, and will be binding in the absence of any showing that this determination was incorrect or unjust. (Page 419.)

6. SAME—LIABILITY OF HOMESTEAD.—Special assessments for local improvements are "taxes" within section 3, art. 9, Const. 1874, providing that homesteads shall not be subject to the lien of any judgment or to sale under execution except, among other things, for taxes. (Page 420.)

7. SAME—TAX AS PARAMOUNT LIEN.—Acts 1909, c. 119, providing that the lien for assessments shall be superior to the liens of prior mortgages, etc., does not impair the obligation of contracts, as every property owner holds his property subject to the exercise of the taxing power. (Page 431.)

8. SAME—CONSENT OF LAND OWNERS.—While the Constitution requires that the creation of improvement districts in cities and towns must be based on the consent of a majority in value of the property owners, no such constitutional requirement is imposed in the case of improvement districts formed outside of cities and towns. (Page 422.)

9. SAME—CONCLUSIVENESS OF COMMISSIONERS' FINDING.—Acts 1909, c. 119, § 5, providing that the commissioners therein provided for shall find whether the petition for the proposed improvement contained a majority in value of the land owners of said district, and shall so declare, and shall proceed to carry out the act, the finding of the commissioners upon this subject is conclusive, and cannot be reviewed by the courts. (Page 424.)

10. SAME—PUBLIC BRIDGE—GRANT OF RIGHT-OF-WAY OVER.—Acts 1909, c. 119, § § 2, 39, is not void for providing that the commissioners of the Fort Smith and Van Buren District shall have the power to grant a right-of-way over said bridge to any public utility, and to receive rents therefor, but that such concession shall not interfere with the reasonable use of such bridge as a public highway. (Page 425.)

First case on appeal from Sebastian Chancery Court; the second case from Crawford Chancery Court; *J. Virgil Bourland*, Chancellor, in first two cases; third and fourth cases on appeal from Crawford Chancery Court; *Jeremiah G. Wallace*, Chancellor, in last two cases, on exchange of circuits; affirmed.

*Mehaffy & Williams, Carmichael, Brooks & Powers, Sam R. Chew, C. A. Starbird* and *J. E. London*, for appellants.

1. The act is repugnant to section 28, art. 7, of the Constitution, which confers *exclusive* original jurisdiction upon the county courts in *all* matters of bridges and other internal improvements. 89 Ark. 513; 48 Ark. 370; 57 Ark. 555; 60 *Id.* 95; 4 Words & Phrases, p. 3877.

2. Local assessments must be uniform and apply alike to all property similarly situated. 48 Ark. 370; 48 *Id.* 251; 172 U. S. 269; 2 Ark. 289, 296; 57 *Id.* 554-9.

3. The Legislature can not create districts which could lend their aid to railways and street car companies. Art. 12, § 5, Const.; 172 U. S. 269. Taxation in excess of special benefits is taking property without due process of law. 172 U. S. 269; 71 Am. St. 884; 45 L. R. A. 291; 68 Am. St. 717.

4. Liens can not be created upon homesteads. Art. 9, § 3, Const.; 65 Ark. 503; 21 *Id.* 41.

5. The question of a majority in value is jurisdictional. 59 Ark. 358; 50 *Id.* 116; 59 Cal. 206; 117 U. S. 683-9 (Law. Ed.); 168 U. S. 236 (Law. Ed.) 451; 68 Fed. 961; 2 Page & Jones on Tax., § 781.

6. The finding of the commission is not conclusive. 71 Ark. 556.

7. The act violates section 1, article 16, of the Constitution. Gray on Lim. of Tax. Power, 230; 4 S. W. 330; 3 Am. Rep. 615; 8 *Id.* 255; 69 Pa. St. 352.

8. A bridge can not be made the subject of a local improvement to be paid for by local assessments, as it is a matter of *general* benefit to the public. 74 Md. 116; 39 N. J. L. 656; 85 Pa. St. 163.

9. Sebastian County's two districts are practically two counties, which can not be embraced in one improvement district.

*Hill, Brizzolara & Fitzhugh,* for appellee.

1. When the Legislature acts itself, its act is conclusive alike of the question of the necessity of the work and of the benefits against the property assessed, and it is not open to the court to review its action. 164 U. S. 112, 175; 170 *Id.* 304; 83 Ark. 54; 172 U. S. 269. A bridge across a navigable stream is a proper subject-matter of an improvement district. 1 Page & Jones on Special Assessments, § § 359, 419; 170 U. S. 304; 68 Conn. 131; 64 Vt. 28; 50 Minn. 248; 103 Mass. 129; 104 Mass. 236; 6 Allen, 353.

2. The Legislature may create a district embracing two counties. 68 Conn. 131; 170 U. S. 304; 153 Mass. 566. It can also apportion the expense or cost. 153 Mass. 566; 178 *Id.*

213; 104 *Id.* 236; 103 *Id.* 129; 6 Allen 353; 166 *Id.* 347; 64 Vt. 28; 50 Minn. 248; 52 N. W. 858; 20 Minn. 74; 37 Atl. 158; 13 R. I. 50; 55 N. J. L. 258; 160 Ind. 533; 35 N. W. 545; 47 *Id.* 11; 43 *Id.* 946; 127 Ill. 581; 207 *Id.* 11; 1 Page & Jones, Taxation Assessment, § 61; 2 *Id.,* § 664, 704; 125 U. S. 345; 83 Ark. 344; 15 Kan. 500; 69 Ark. 436; 205 U. S. 135.

3.  Nonresident owners can legally sign the petition.  71 Ark. 556; 90 *Id.* 29.

4.  A failure to provide for an appeal or that notice be given of meetings of the commission does not avoid the act. Kirby's Digest, § 6998; 49 Ark. 518; 214 U. S. 359; 86 Ark. 231; 209 U. S. 414; 210 *Id.* 373; 80 Ark. 462, 318.

5.  The Legislature may make the action of the commission in finding that the petition was duly signed by a majority in value, etc., conclusive.  78 Ark. 432, 463; 72 Ark. 205; 84 *Id.* 390; 72 Ark. 432; 32 *Id.* 553; 40 Ia. 226; 37 *Id.* 78, 598; 62 Mich. 456; 1 Metc. (Ky.), 533; 122 Cal. 442; 130 Ind. 514; 108 *Id.* 443; 27 Atl. 66; 112 Ind. 361; 21 How. 539; 92 U. S. 484; 94 *Id.* 104.

6.  The act is not repugnant to article 7, section 28, of the Constitution.  89 Ark. 513.

McCULLOCH, C. J.  The General Assembly of 1909 passed an act authorizing the construction and maintenance, through an organization in the nature of an improvement district, of a public bridge across the Arkansas River at Van Buren, Arkansas, where that river constitutes the boundary line between Sebastian and Crawford counties. The first section of the act, which sets forth the purposes of the organization, and prescribes the bounds of the district created, reads as follows (Acts, 1909, c. 119):

"Section 1.  That Upper Township of Sebastian County and all of Crawford County, except the following townships, towit:  Winfrey, Sand Point and Shepherd, be and the same is [are] hereby created and constituted a bridge district; and said district shall be known as the Fort Smith & Van Buren District, and shall be a public agency and a body politic and corporate under said name and style, and by that name may sue and be sued, plead and be impleaded, and have perpetual succession for the purposes hereinafter designated. The said district may have a common seal, and may make such bylaws and regula-

tions from time to time as may be deemed proper, not inconsistent with this act or the laws of this State, for the purpose of carrying into effect the objects of its creation. And said district may appoint all officers and agents which it deems necessary and suitable for the conduct of the business of said corporation, and may do all other acts and things not inconsistent with the laws of this State which may be proper to carry into effect the purposes and objects of this act. For the purpose of convenience of description, Upper Township shall be described herein as the Sebastian Division of said district, and all of Crawford County except the townships hereinbefore named shall be described as the Crawford Division of said district."

Subsequent sections prescribe the manner of organization, etc., and authorize the construction of the bridge upon petition found to contain the signatures of a majority in value of the owners of real property in the district. It also provides for levying and enforcing the collection of assessments on property in the district benefited by the improvement to defray the cost of constructing and maintaining the bridge. There are other provisions of the act which will be mentioned later in this opinion.

A petition asking for the improvement was duly filed with the commissioners of the district, which was found to contain a majority in value of the owners of the real property, and the commissioners were proceeding to form plans and let a contract for the construction of the bridge, and to levy assessments on the property benefited, when several actions were instituted in the chancery courts of Sebastian and Crawford counties by owners of property in those counties to restrain them from doing so. The complaint in each case was dismissed for want of equity, and the several plaintiffs appealed to this court. The validity of the statute is attacked on several points, and each of the cases will be disposed of in this opinion.

The first point of attack to be noticed is that the act is repugnant to section 28 of article 7 of the Constitution, which confers upon county courts "exclusive original jurisdiction in all matters relating to county taxes, roads, bridges, ferries * * * and in every other case that may be necessary to the internal improvement and local concerns of the respective coun-

ties." In support of this contention, the case of *Road Improvement District No. 1 v. Glover,* 89 Ark. 513, is relied on, wherein it was held that "counties can not be organized into districts for building, repairing and maintaining roads without usurping the exclusive jurisdiction of roads vested in the county court by the Constitution," and that "districts can not be formed or authorized to lay out and establish new public roads, and impose upon the county court the duty to maintain them." It was not held that the Constitution withholds from the Legislature the power to authorize the construction, as local improvements, of new roads to be paid for by assessments on property to be benefited, nor is there a justifiable inference to be drawn from the decision that the court should hold that the Legislature can not authorize the construction of a bridge as a local improvement. The reason given by the court for the ruling was that to put the whole county into a road improvement district would be to substitute the commissioners or board of directors for the county court in the exercise of jurisdiction over the roads, and that it would be a usurpation of the county court's jurisdiction to authorize the construction of a new public road as a local improvement and thrust it upon that court for maintenance as a part of the public road system of the county. We perceive no sound reason why the Legislature may not, without trenching upon the jurisdiction of the county court, authorize the construction of new roads and bridges as local improvements. It does not impose upon the general public the burden of maintaining the improvement, nor does it fasten upon the county court the duty of supervising and maintaining the new road or bridge as a part of the internal affairs of the county. The statute now under consideration, by its express terms, is rescued from such an objection, for it provides that the county courts of said counties *may* take over and acquire the bridge after it had been constructed, and maintain it as a public highway, but that, in the event the county courts do not decide to take it over, then it shall be maintained by levying annual assessments on the property benefited. It is left entirely optional with the county courts of the two counties whether or not the control of the bridge shall be taken over, and this provision leaves unim-

paired the jurisdiction of the county court over the bridge when it has seen fit to exercise that jurisdiction.

This conclusion leaves out of consideration the fact that the bridge is to span a navigable river which is the boundary between two counties, and that it is not and can not be wholly within the jurisdiction of the county court of either county. The result would be the same if it were a bridge to be erected wholly within the bounds of one county; for we are of the opinion that, even under those circumstances, its construction may be authorized as a local improvement. The construction of an improvement under those circumstances would not be an invasion of the jurisdiction of the county court.

This brings us to a consideration of the kindred question raised in the cases, that a bridge can not be made the subject of a local improvement, to be paid for by local assessments, for the reason, as alleged, that it is in its nature of a general benefit to the public at large, and should be constructed by general taxation. Whilst it may be true that the benefits which flow from almost all local improvements, which are usually authorized to be constructed at the expense of local property-owners—street pavements, sewers, public parks, waterworks, in cities and towns, levees built for the protection of overflowed lands—all inure to the benefit of the general public to a greater or less extent, yet it is not true that a bridge, any less than improvements of the other kinds mentioned above, does not produce special benefits to adjoining lands so as to justify special assessments to defray the expenses of such improvements. A bridge for the use of the public, like a street in a city or a highway in the country, is undoubtedly of great benefit and convenience to the traveling public; nevertheless, it may be also of special benefit to adjoining lands and a fit subject for construction from the proceeds of local assessments. It is settled that improvement districts "are based and sustainable only upon the theory that the local assessments levied to sustain them are imposed upon the property of persons who are specially and peculiarly benefited in the enhancement of the value of their property by the expenditure of the money collected on the assessment." *Rector* v. *Board of Improvement,* 50 Ark. 116; *Road Improvement District No. 1* v. *Glover, supra.*

Note the words, *"specially and peculiarly benefited."* The benefits need not be exclusive. The general public may also derive benefits in more remote degree, yet, if there is a special and peculiar benefit inuring to the adjoining property, local assessments are justified. A fair illustration of this is found in the decision of this court in *Matthews* v. *Kimball,* 70 Ark. 451, where a public park in the city of Little Rock was held to be a local improvement within the meaning of the Constitution and statutes, and that the whole city could be embraced in an improvement district and all the real property therein taxed to pay for such improvement.

There is another contention, easily disposed of, that the act is void because it attempts to create an improvement district embracing parts of two counties. We see nothing to hinder this, either from a practical or constitutional standpoint. There is nothing in the Constitution which forbids. The act creates a distinct governmental agency, separate and apart from the county governments, to perform a specific function and to accomplish a particular end. It does not disturb the autonomy of the respective counties, nor impair them in the exercise of their governmental functions.

The following language of Judge Mitchell in delivering the opinion of the court in *Maltby* v. *Tautges,* 50 Minn. 248 (52 N. W. 858), is applicable not only to this but to other questions in the present case: "If a certain territory is specially interested in a highway or bridge, but some localities in that territory interested more than others, there is nothing in the way of the Legislature imposing the burden of the expense on the territory thus specially interested, regardless of the lines of political subdivisions of the State, and of apportioning that burden among the different localities in that territory in accordance with their respective interests, and establishing different taxing districts for that purpose. The power of taxing and the power of apportioning taxes are inseparable."

The following basis of assessments is fixed in section 7 of the act as follows: "Immediately after ascertaining the cost of the public improvement contemplated by this act, the commission shall appoint six assessors, three of whom shall reside in the Crawford division, and three of whom shall reside in the Sebastian division of said district. Each of said as-

sessors shall, before entering upon the discharge of his duty, take an oath to well and truly assess, to the best of his ability, the value of all benefits to be received by each land owner by reason of the proposed improvement as affecting each tract of land within said district. They shall ascertain the value of the real property within said district without said improvement, and the value thereof as benefited by said improvement, and shall charge against each lot, tract or parcel of real estate in said district an assessment according to the value of the benefit that will accrue to it by reason of the construction of said bridge; provided, however, that the assessment of benefits against each of the aforesaid divisions of the district shall bear the same proportion to each other which the assessment of real estate in said divisions of said district bear to each other, as determined by the last county assessment of said divisions of said district."

There is another limitation in the statute as to the amount of assessments, to the effect that the cost of improvements shall not exceed 10 per cent. of the valuation of real property in the district as shown by the last county assessments. It will be seen, therefore, that the basis of assessments prescribed by the act is fixed, that the ratio of assessments between the two divisions of the district shall be proportionate to the assessments of the real property in the respective divisions according to the last county assessments for taxation, the result being that the cost of the improvement is to be imposed on the property in the two divisions of the district in the "same proportion to each other which the assessment of real estate in said divisions of said district bear to each other," and the portion thus imposed on each division is to be assessed against lands in that division according to estimated benefits to each tract. To employ an illustration used by counsel in argument, as the total county assessments of real estate in the respective divisions bear to each other the proportion of 70 to 30, therefore 70 per cent. of the cost of the improvement will be apportioned to the one division and assessed against the lands therein according to benefits, and likewise 30 per cent. to the other division.

It is earnestly insisted that this division arbitrarily imposes a given amount of the cost of improvement on the lands

of the respective divisions without regard to the relative bene-
fits, and thus destroys uniformity in apportioning the burden
of taxation.   It is said, as an illustration of the alleged evils
of the scheme, that lands in one division of the district may
be assessed 100 per cent. of the estimated benefits, whilst lands
in the other division may escape with assessments of less per-
centage of the estimated benefits.

Conceding that the constitutional requirement of uniformity
and equality applies to assessments for local improvements out-
side of cities and towns—which seems to be settled by the
decision of this court in *Davis* v. *Gaines,* 48 Ark. 370—it be-
comes necessary to ascertain what powers the Legislature pos-
sesses in determining the standard of uniformity in such mat-
ters. In the outset it must be remembered that precise uniformity
is not always obtainable, and the law does not exact absolute
accuracy in that regard.   Substantial or approximate equality
and uniformity only is required, for no greater degree of pre-
cision is practicable, not to say possible, in most instances.
1 Cooley on Taxation, 257.   The constitutional requirement
of uniformity is satisfied when assessments are imposed equally
upon all standing in like relation.  *Cribbs* v. *Benedict,* 64 Ark.
555; *Fort Smith* v. *Scruggs,* 70 Ark. 549.

It was within the power of the Legislature to have as-
sessed the cost proportionately upon the lands of the district
according to the legislative estimate of benefits, without as-
signing that duty to the commissioners of the district.  *Sud-
berry* v. *Graves,* 83 Ark. 344; *Spencer* v. *Merchant,* 125 U.
S. 345.

Now, since the Legislature possessed that power, it could,
upon its own estimate of benefits, apportion the cost of the
improvement to the separate parts of the district without vio-
lating the rule of uniformity.   Here we have a plan for the
construction of a bridge which connects two localities upon
opposite sides of a navigable stream.   As said by the Supreme
Court of the United States in such a case:  "It may fre-
quently happen that a bridge or causeway across the boundary
line between two counties may be a vital necessity to one and
of little use to the other."  *Washer* v. *Bullitt County,* 119 U.
S. 558.   Each tract of land may separately derive a certain

benefit from the whole improvement, and yet the relative benefits in the aggregate between the lands on different sides of the river may accrue in a different proportion to the cost of the whole improvement. This inequality was within the province of the lawmakers to correct, by making the lands on each side of the river bear the just proportion of the whole cost of the improvement in accordance with the relative benefits to be received in the aggregate by lands in each of the localities affected. It does not violate the rule of uniformity, but on the contrary conforms to it. We have in this statute the legislative determination that the two localities upon opposite sides of the river will be benefited in the aggregate in the same proportion to each other that the assessments for county taxes bear to each other. It is not shown that this determination was incorrect or unjust, and we can not say that the Legislature arbitrarily abused its powers in thus estimating the proportionate benefits. It has seen fit wisely to safeguard the interests of land owners by providing in effect that, after the apportionment of benefits has been made to the two divisions of the district, the assessment against each particular tract of land shall not exceed the estimated benefit to accrue to it from the improvement.

It is next contended that homesteads outside of cities and towns are exempt from assessments for local improvements, and that, as the act attempts to create liens on homesteads, it is unconstitutional and void. If it be true that homesteads are exempt from such assessments, it is impossible to authorize local improvements outside of cities and towns by special assessments, for the exemption would destroy the uniformity of assessments, and thus render the whole scheme void. *Davis* v. *Gaines, supra.* The constitutional provision on the subject of homestead exemptions reads as follows: "The homestead of any resident of this State who is married or the head of a family shall not be subject to the lien of any judgment, or decree of any court, or to the sale under execution or other process thereunder except such as may be rendered for the purchase money or for specific liens, laborers' or mechanics' liens for improving the same or for taxes or against executors, administrators, guardians, receivers, attorneys for moneys collected by them, and other trustees of an express trust for

moneys due from them in their fiduciary capacity." Section 3, article 9, Constitution.

This court, in *Ahern* v. *Board Improvement District,* 69 Ark. 68, speaking of assessments for local improvements in cities, said: "Those assessments, though differing in some respects from taxes for general purposes, are yet authorized under the taxing power. If so, so far as the mere exercise of power is concerned, the same rule applies as in cases of taxes." The court then proceeds to hold in the same case that a homestead in the city is not exempt from improvement assessments for the additional reason that no provision of the Constitution authorizes special assessments for local improvements. That decision clearly holds, in addition to the reason last mentioned, that a homestead is not exempt for the reason that the lien for special assessments falls within the exceptions as to taxes in the homestead clause. This court has also held, it is true, that for some purposes a local assessment is not a tax within the meaning of the term. *Sanders* v. *Brown,* 65 Ark. 498; *Paving District* v. *Sisters of Mercy,* 86 Ark. 109. But the word "tax" may be, and sometimes is, susceptible of a different meaning when used in a different connection, according to the manifest intention of the framers of the Constitution. When the Constitution of 1874 was framed, the plan of constructing levees as local improvements, to be paid for by special assessments on the lands to be affected thereby, was a part of our legislative scheme. At that time laws stood on the statute books providing for the organization of levee districts and authorizing special assessments to defray the cost of construction of levees. Therefore, it is not believed that the framers of the Constitution intended to abrogate those laws and render them void by an exemption of homesteads from special assessments, thus destroying the uniformity of such assessments. It is obvious that the framers of the Constitution used the word "tax" in the homestead provision as meaning all assessments or impositions authorized under the taxing power.

In one of the cases before us the point is made that the act is void because it attempts to impair the obligation of existing contracts by making the liens for assessments superior

to the liens of prior mortgages, etc. This question is well settled by the authorities against the contention, and need not be further discussed. Gray, Limitations of the Taxing Power, § 1188. In *Wabash Eastern Railway Company* v. *Special Drainage District,* 134 Ill. 384, 10 L. R. A. 285, the correct view of this question is aptly stated, as follows: "Every property-owner holds his property subject to the exercise of the taxing power, and it is immaterial, so far as this question is concerned, what may be the nature of his interest, whether the fee, an estate in expectancy, an estate for years, or a mere lien. This is true, as every one must admit, in relation to general taxes where the only return to the taxpayer is the protection and security which the government gives him, and, *a fortiori,* should be true in case of special assessments, where, in theory at least, he receives an adequate and complete return for the money assessed in the enhanced value of the estate or property which he owns, or to which his lien attaches."

It is alleged in one of the complaints that the names of certain corporations owning property in the district were signed without authority to the improvement petition, and that, omitting the names of those corporations from the petition, it did not contain a majority in value of the owners of all the real property in the district. It is therefore contended that this is jurisdictional, and that the Legislature could not, as it attempted to do, make the findings of the commissioners upon the question conclusive. The section of the statute bearing upon this question is as follows:

"Sec. 5. Immediately upon the organization of said commission, or as soon thereafter as is convenient, they shall give public notice of the passage of this act and of their organization, and the purposes of said act, and that the public improvement herein contemplated is conditioned upon its approval by a majority in value of the owners of real estate within said district. If, at any time within three months from the passage of this act, a petition or petitions purporting to be signed by a majority in value of the owners of real property within said district is filed with said commission, the commission shall give public notice of said fact in at least one newspaper published in Fort Smith and at least one newspaper published in Van

Buren, and set a day and place for the hearing not less than twenty days after the first publication of said notice; and at said place and time, so designated, the commissioners shall examine the petition or petitions filed, and examine the assessment of the real property within said district, and, for the purposes of said hearing, may adjourn from day to day, or from time to time, until said hearing is completed, at which hearing any land owner in the district may be heard and evidence may be taken in such manner as the commission may deem proper to determine the facts as to whether said petition or petitions are signed by a majority in value of the land owners of said district, as shown by the last county assessments of the lands within said district.

"If at said hearing the commissioners shall find that the petition or petitions are not signed by a majority in value of the land owners of said district as shown by the last county assessment, they shall so declare, and such finding shall terminate all proceedings under this act.

"If said commission shall find that said petition or petitions are signed by a majority in value of the land owners of said district as shown by the last county assessment, they shall so declare and shall proceed to carry out the purposes of this act. And in either event public notice shall be given in at least one newspaper published in Fort Smith and in at least one newspaper published in Van Buren of said fact, and a copy of their findings shall be filed with the county court of Crawford County and the county court of the Fort Smith District of Sebastian County."

This court has decided several times that, as to improvement districts in cities and towns which are governed by the constitutional provision to the effect that assessments for local improvements must be based upon the consent of a majority in value of property holders, the consent of such majority is jurisdictional, and that the failure to obtain it is fatal to all subsequent proceedings. *Rector* v. *Board of Improvement,* 50 Ark. 116; *Watkins* v. *Griffith,* 59 Ark. 344; *Craig* v. *Waterworks Improvement District,* 84 Ark. 390.

Respecting this question, we see no distinction between an improvement district in a city or town and an outside one created

by the Legislature, where the statute governing the organiza-
tion of the district makes the power to act depend upon ob-
taining the consent of a majority of the property owners. But
in another respect there is a wide difference between improve-
ment districts formed inside, and those formed outside, of cities
and towns. The former must be created pursuant to and under
the restrictions prescribed by the constitutional provision above
referred to, whilst the power of the Legislature is unrestricted
by the Constitution as to the creation of improvement districts
outside of cities and towns. *Craig* v. *Waterworks Improvement
District, supra.* The Legislature may lay out such districts at
will and put them into full operation without obtaining the con-
sent of property owners—even to the extent of directly levying
assessments without the intervention of any other instrumental-
ity, such as assessing boards, etc. *Sudberry* v. *Graves, supra.*

In the statute creating this district, the Legislature has not
seen fit to make the power to proceed depend upon obtaining
the consent of a majority of the property owners, but upon
the ascertainment and declaration of the commissioners that the
petition has been signed by a majority in value of the property
owners. The power of the Legislature to directly put the dis-
trict into operation, without obtaining the consent of the prop-
erty owners, embraces the power to put it into operation by
the ascertainment and declaration of the commissioners, at least
where there is a provision for a public hearing before the com-
missioners on the question.

Moreover, it is a well settled principle of law that where
the Legislature has erected a tribunal for the purpose of as-
certaining and declaring the result of an election upon any
subject, the decision of such tribunal is conclusive, and can not
be reviewed by the courts. *Govan* v. *Jackson,* 32 Ark. 553;
*Rice* v. *Palmer,* 78 Ark. 432; *Ryan* v. *Varga,* 37 Ia. 78; *Baker*
v. *Board of Supervisors,* 40 Ia. 226; *Hipp* v. *Board of Super-
visors,* 62 Mich. 456; *Simpson* v. *Commissioners,* 84
N. C. 158; *Cain* v. *Commissioners,* 86 N. C. 8;
*Batman* v. *Megowan,* 1 Metc. (Ky.), 533; *State* v. *Harmon,*
31 Ohio St. 250; *Reclamation District* v. *Burger,* 122 Cal. 442;
*Tucker* v. *Sellers,* 130 Ind. 514; *Scranton* v. *Jermyn,* 27 Atl.
(Pa.) 66.

The circulation and presentation of a petition expressing the consent of the property owners is in the nature of an election, and the doctrine above announced as to the conclusion of the decision of a special tribunal determining the result applies to this proceeding as it does to a political election.

It is insisted by learned counsel for appellants that the case of *Board of Improvement District No. 60* v. *Cotter,* 71 Ark. 556, conflicts with the conclusion we now express. We do not think so. There the court held that the statutory requirement that ten resident property owners must petition the city council before an improvement district in a city could be formed was jurisdictional, and that the question whether or not the district had been legally formed on such petition could be raised collaterally at any time. The governing statute in that case did not pretend to constitute the city council a tribunal to decide whether or not the petition was signed by the requisite number of resident property owners. The statute now under consideration expressly empowers the commissioners to decide the question whether or not a majority signed the petition, and in effect makes that decision final. It provides for a hearing by the commissioners, after giving public notice.

The case of *Rice* v. *Palmer, supra,* is directly in line with the Cotter case. In both the majority and dissenting opinion the doctrine was distinctly recognized that the Legislature could create a tribunal to decide the result of an election and make the decision of that tribunal conclusive, but the judges differed as to whether or not the Legislature had erected such a tribunal —the majority holding that it had not done so.

The act contains the following provision, the validity of which is attacked (section 2) : "The commission shall have the power to grant a right-of-way over said bridge to any public utility upon such terms as the commission shall determine; provided, however, that the concessions which may be granted to public utilities shall not interfere with the reasonable use of such bridge as a public highway." Another section of the act (section 39) provides that the commissioners shall have power "to receive rents from the concessions heretofore authorized from the public utilities for the purpose of construction, repair or maintenance of the improvement herein contemplated."

It is alleged in one of the complaints that the commissioners have adopted plans and let a contract for building a bridge 61 feet wide, 18 feet thereof for the accommodation of the general public and the balance for the use of public utility corporations, such as steam and electric railways. It is admitted that in the plans for the construction of the bridge two-thirds of the floor space is set apart for the use of the general public and one-third for the public utilities, for which toll is to be charged. The case does not present the question whether or not the Legislature can authorize, as a local improvement to be paid for by assessments on adjoining property, the construction of a bridge for the exclusive use of a public carrier. The bridge is to be constructed for the use of the general public, and the provision for setting apart of certain space to the use of public utility corporations for hire is a mere incident. This gives an enlarged use of the bridge by the public, and we perceive no reason why this provision should be held to vitiate the statute. The enlarged use of the bridge augments the benefits to the property affected thereby—at least, the Legislature had the power so to determine, and it does not impose on the taxpayers the burden of constructing an improvement for the use of the corporations. The entire use of the bridge is, after all, for the benefit of the public, and the benefits are special to the property affected thereby within the sense that it is a local improvement. This idea is expressed by Mr. Justice Bradley in delivering the opinion of the Supreme Court of the United States, speaking of the power to grant a right-of-way over a public street or highway to street railway companies: "By the accommodation which they afford, the citizen can reside miles from his shop or place of business. Though attended with some inconvenience, they have greatly added to the efficiency of public thoroughfares, and have more than doubled their capacity for travel and transportation." *Barney* v. *Keokuk,* 94 U. S. 324.

We conclude that none of the attacks on the validity of the statute or on the proceedings of the commissioners is well founded, so the decree in each case is affirmed.

Battle, J., not participating.