The Honorable David Johnson State Senator
2511 Valley Park Drive Little Rock, Arkansas 72212
Dear Senator Johnson:
This is my opinion on your questions about energy efficiency improvement districts.
BACKGROUND
The facts stated below come from your request, other written information you submitted, conversations with you and others, and my office's research.
You propose that legislation be enacted to create or provide for[1]
energy efficiency improvement districts in Arkansas. A property owner could apply for and receive money from a district to pay the cost of improving the property's energy efficiency. The owner would repay the money over a period of years through a special assessment imposed by the district, collected with the owner's regular property taxes, and secured by a lien on the improved property.
Districts would be authorized to issue bonds to fund advances to property owners, whose assessment payments would be applied to bond debt service. *Page 2 
You ask whether the Arkansas Constitution prohibits the creation of energy efficiency improvement districts, and whether a district's special assessment may be given lien priority over a mortgage.
RESPONSE
In my opinion, the Arkansas Constitution does not prohibit the creation of energy efficiency improvement districts, although it does contain provisions that should be considered when drafting legislation. It is also my opinion that special assessments may be given lien priority over mortgages.
Question 1 — Does the Arkansas Constitution prohibit the creationof energy efficiency improvement districts?
You have not submitted a draft or detailed description of proposed legislation. I cannot render an opinion that any legislation providing for energy efficiency improvement districts would be valid in all cases under the state constitution. Any enactment's validity may depend on its particular provisions and practical application. I can, however, discuss the general principles under which legislation's constitutionality might be determined and certain constitutional provisions that legislative drafters should consider.
From our earliest days of statehood, the Arkansas Supreme Court has held our constitution to be a statement of limitations on legislative power rather than a grant of authority: "The legislature . . . can exercise all power that is not expressly or impliedly prohibited by the [state] constitution; for whatever powers are not limited or restricted, they inherently possess as a portion of the sovereignty of the State."State v. Ashley, 1 Ark. 513, 538 (1839).
Thus an enactment is beyond the General Assembly's authority only if it is prohibited by the constitution expressly or by fair implication; specific authorization is not required: "We look to [the constitution], not so much to see whether a contested enactment is authorized, but whether it is prohibited. For, if not prohibited either by the letter or the spirit of the fundamental instrument, it is authorized."Vance v. Austell, 45 Ark. 400, 408 (1885). *Page 3 
The court has followed the rule in cases involving the legislature's constitutional authority to create improvement districts: "The Constitution of the State is not a grant or an enumeration of powers vested in the legislative department, but is a limitation upon the exercise of such powers, and the Legislature can exercise all the powers not expressly or by fair implication forbidden by the Constitution."Butler v. Board of Dir. of Fourche Drainage Dist.,99 Ark. 100, 103, 137 S.W. 251 (1911). See also Smart v. Gates,234 Ark. 858, 355 S.W.2d 184 (1962).
The passage of time has not weakened the rule. See, e.g.,Erxleben v. Horton Printing Co., 283 Ark. 272, 675 S.W.2d 638 (1984);Wells v. Purcell, 267 Ark. 456, 592 S.W.2d 100 (1979); Jones v.Mears, 256 Ark. 825, 510 S.W.2d 857 (1974); Berry v. Gordon,237 Ark. 547, 376 S.W.2d 279 (1964).
The inquiry, then, is whether the constitution expressly or by fair implication prohibits the legislature's creation of improvement districts in general or, if not, how any limitations on the legislature's power to create improvement districts would constrain the formation of energy efficiency improvement districts in particular.
The Arkansas constitution does not prohibit, in general, either the creation of improvement districts or the imposition of special assessments for local improvements.
Arkansas law involving improvement districts and assessments predates our current constitution. See, e.g., McGehee v. Mathis,21 Ark. 40 (1860); Act 138 of 1859 (both involving assessments for levee construction). But the 1874 constitution's provisions are the principal reason that improvement districts and assessments have played a major role in the state's history and development:
 In Arkansas the outstanding importance of the improvement district — an independent taxing district existing separately from the other types of taxing district such as counties, municipal corporations and school districts — arises from the inclusion in the Arkansas Constitution of 1874 of provisions prescribing maximum rates of general property taxation in counties and municipal corporations and prohibiting them from issuing interest-bearing evidence of indebtedness. *Page 4 
 Limiting the maximum rate of general property taxation rendered the general property tax an inadequate source of revenue for securing funds to construct all of the local improvements ordinarily paid for with the proceeds of general taxation.
 The prohibition against issuing interest-bearing certificates of indebtedness prevented counties and municipalities from borrowing money and issuing bonds. It was, therefore, impossible for them to build and construct the more expensive public improvements which can be properly financed only through the issuance of bonds permitting the cost of the improvement to be paid during a period of years.
 As these constitutional restrictions do not apply to improvement districts, whether urban or rural, the result has been that the improvement district is used in Arkansas as a means of constructing and financing not only the types of improvements usually so constructed in other States but also for many kinds of . . . improvements . . . which in most States are constructed and financed by the municipality or county from the proceeds of general taxation.
Horace Sloan, A Treatise on the Law of Improvement Districts inArkansas 18 (1928) (emphasis added).[2]
Partly because of these local peculiarities, "it is believed that the reports of no other State in the Union contain as many cases on this subject as those of Arkansas" and "the Arkansas reports contain more decisions about constitutional questions regarding improvement districts and local assessments than any other State in the Union."Id. at vii.
Because the constitution does not prohibit the legislature's creation of improvement districts or imposition of assessments for improvements, [3] an *Page 5 
examination of the constitutional limitations most likely to be relevant in this area is appropriate.
The Arkansas Supreme Court, in discussing the legislature's authority with respect to assessments for improvement, said that "[t]he only [relevant] limitation found in the constitution is Article 19, Section 27. . . ." Smart, 234 Ark. at 860. The cited section provides:
 Nothing in this Constitution shall be so construed as to prohibit the General Assembly from authorizing assessments on real property for local improvements, in towns and cities, under such regulations as may be prescribed by law; to be based upon the consent of a majority in value of the property-holders owning property adjoining the locality to be affected; but such assessments shall be ad valorem and uniform.
Ark. Const. art. 19, § 27.
Compliance with all the requirements of this section could be problematic in the context of an energy efficiency improvement district. For example, as I understand the proposal, a property owner's assessment amount would depend on the amount of money advanced for the owner's energy efficiency project, not on the value of the owner's real property. An owner who received no advance would pay no assessment. Whether the assessments would be ad valorem or uniform would be open questions at best.
Cases of the Arkansas Supreme Court are to the effect, however, that Ark. Const. art. 19, § 27, "applies only to improvement districts purely local to a municipality and does not include districts including property inside as well as outside the municipal limits." Op. Att'y Gen. 2008-114 at 6, n. 1, citing Butler, 99 Ark. 100, andCurlin v. Harding Drain Improvement Dist.,221 Ark. 412, 252 S.W.2d 345 (1952). See also Cox v. Road ImprovementDist. No. 8, 118 Ark. 119, 176 S.W.2d 676 (1915). *Page 6 
In my opinion, then, Ark. Const. art. 19, § 27, will not constrain the legislature in connection with the creation of energy efficiency improvement districts, provided district assessments are not "made for purely local improvements within a municipality. . . ." Curlin,221 Ark. at 414. You should note, however, that the inclusion in a primarily-municipal improvement district of "rural property insignificant in area or so grossly disproportionate in value as to suggest fraud" might bring the district within the reach of the constitutional provision. Id. at 415.
While I agree with the court's statement in Smart
that Ark. Const. art. 19, § 27, is the only part of the constitution expressly relevant to assessments for improvements, I will mention two other provisions that could be argued to apply to energy efficiency improvement districts under certain facts.
The first states that "[a]ll real . . . property subject to taxation shall be taxed according to its value, . . . making the same equal and uniform throughout the State." Ark. Const. art. 16, § 5. If an energy efficiency improvement district's special assessments are taxes on property within the meaning of this section, they might be argued to violate it as not being equal, uniform, or based on value. The Arkansas Supreme Court has held, however, that assessments for public improvements are not taxes for this purpose:
 [Municipal street improvement district] special assessments are not really "taxes" in the usual and ordinary meaning of the word. While both are referable to the sovereign power of taxation, the words "taxes" on the one hand and "assessment", "special assessments" or "local assessments" on the other, ordinarily have distinct legal meanings. The word "taxes" refers to exactions laid by the government for purposes of general revenue. The word "assessments" refers to exactions laid for making local improvements for the benefit of property owners. The word "tax" does not include "assessments."
Rainwater v. Haynes,244 Ark. 1191, 1193-1194, 428 S.W.2d 254 (1968). See also, e.g.,Fry v. Poe, 175 Ark. 375, 1 S.W.2d 29 (1927); Board ofImprovement v. School Dist., 56 Ark. 335, 19 S.W. 969 (1892).
Because energy efficiency improvement district assessments would be imposed in connection with improvements to benefit the owners paying the assessments, and *Page 7 
not for the purpose of raising general revenues, it is my opinion that Ark. Const. art. 16, § 5, likely would not apply to such assessments.[4]
The second constitutional provision that might be argued to be applicable to energy efficiency improvement districts states that "[n]o ad-valorem tax shall be levied upon property by the State." Ark. Const. amend. 47.
In my opinion, this provision is unlikely to apply, for several reasons. First, an improvement district assessment is probably not a tax, under the same reasoning used in the cases cited above in connection with Ark. Const. art. 16, § 5. Second, even if an assessment is deemed to be a tax, the Arkansas Supreme Court has held that anad valorem tax, as referred to in Amendment 47, is a tax on the value of property. See Wells v. Arkansas Pub. Serv. Comm'n,272 Ark. 481, 616 S.W.2d 718 (1981). It seems unlikely, then, that an energy efficiency improvement district assessment, the amount of which would be based on the amount advanced to the property owner rather than the value of the property, would be held to be an ad valorem tax within the meaning of Amendment 47. And third, even if an energy efficiency improvement district's assessments were held to be advalorem taxes, Amendment 47 prohibits such taxation only "by the State," and that phrase has been interpreted narrowly. "Absent a clear showing that the ad valorem tax is being used for State purposes only, with no benefit to local governments, we must defer to the General Assembly's judgment with regard to the use of the funds." AndersonTrucking Serv. Inc. v. Arkansas Pub. Serv. Comm'n,261 Ark. 69, 71, 546 S.W.2d 430 (1977) (upholding an ad valorem tax levied statewide and collected by the state, whose proceeds were deposited mostly in state accounts).
While I can offer no assurance that a challenger could not plausibly cite other provisions in a constitutional challenge to legislation providing for energy efficiency improvement districts, [5] no provisions other than those discussed above seem to me likely to be significantly implicated in this context. *Page 8 
As noted above, your request states that energy efficiency improvement districts will be authorized to issue bonds and suggests that special assessment payments will be a source of funds to pay debt service on the bonds. Accordingly, I will briefly discuss the anticipated constitutional status of district bonds.
The constitution provides that no "county, city or town or municipality [shall] ever issue any interest bearing evidences of indebtedness. . . ." Ark. Const. art. 16, § 1. If an energy efficiency improvement district is deemed to be a municipality within the meaning of this provision, it will be empowered to issue bonds, if at all, only under an exception to this prohibition.[6]
In a related context, a predecessor in this office discussed the relevant cases of the Arkansas Supreme Court at some length:
 The court has historically declined to apply art. 16, § 1 to levee districts and other local improvement districts, reasoning that while they may be organized to accomplish municipal purposes, they have no legislative powers and lack other essential characteristics of corporations created to administer local government. See Bell v. Fulkerson, 291 Ark. 604, 727 S.W.2d 141 (1987), citing City of Hot Springs v. Creviston, 288 Ark. 286, 713 S.W.2d 230 (1986) and Fitzgerald v. Walker, 55 Ark. 148, 17 S.W. 702 (1891); Nakdimen v. Bridge Dist., 115 Ark. 194, 172 S.W. 272 (1914); Memphis Trust Co. v. St. Francis Levee Dist., 69 Ark. 284, 62 S.W. 902 (1901). Cf. St. Louis, I.M. S. Ry. v. Bd. Dir. Lev. Dist., 103 Ark. 127, 145 S.W. 892 (1912) (regarding Ark. Const. art. 12, § 4) and Schmutz v. School District of Little Rock, 78 Ark. 118, 95 S.W. 438 (1906) (holding art. 16, § 1 inapplicable to school districts). In concluding *Page 9 
that a levee district was not subject to art. 16, § 1's prohibition against issuing interest bearing bonds, the court in St. Francis Levee Dist., supra, stated that according to the well-established meaning of the term, a "municipality" is "a public corporation created for governmental purposes, and having local powers of legislation and self-government. . . ." 69 Ark. at 286. The court went on to state:
 Now, while every municipality is a public corporation, yet every public corporation is not a municipality, for, as defined above, a municipality is not only a public corporation; it is such a corporation created for governmental purposes, and having, to a large extent, local powers of legislation and self-government. An incorporated levee district, created for the sole purpose of constructing and maintaining a levee, is, like a municipality, a public corporation; but in respect to powers of self-government and legislation it falls far short, and in that regard is clearly distinguished from a municipality, such as an incorporated town or city. These are, to a certain extent, miniature governments, having legislative, executive and judicial powers; but a levee district has few if any such powers, and is not intended to have them, being only an agency created for a special and particular purpose.
 The courts have often recognized the distinction between municipal corporations and these inferior corporations, such as levee districts, school districts, and the like. The distinction was pointed out by the supreme court of Missouri in State v. Leffingwell, 54 Mo. 458, where the court said that the term `municipal corporation' included only cities, towns and other like organizations with political and legislative powers for the local government and police regulation of the inhabitants thereof.
 Id.
Op. Att'y Gen. 94-030 at 3-4. *Page 10 
While Ark. Const. art. 16, § 1, does not apply in general to improvement districts, [7] a legislative drafter should be aware that a particular district or class of districts could be subject to the constitutional debt prohibition to the extent it is held to be an agent of a governmental entity that is subject to the prohibition:
 [The fact that elected local officials were a majority of planning and development districts' boards of directors] may . . . contribute to the difficulty of determining whether the districts are in fact agents of a county or city, and as such governed by art. 16, § 1. See generally Fitzgerald v. Walker and Nakdimen v. Bridge Dist., supra. Cf. Creviston, supra, 288 Ark. at 290 (stating that Ark. Const. art. 16, § 1 of course includes "transparent evasions by which a token commission or other body is created to sign the bonds while disclaiming any responsibility on the part of its creator.") It is my opinion, however, that the agency question would in all likelihood also be resolved in favor of the inapplicability of art. 16, § 1. Although a majority of the board is comprised of local officials, there is no required concurrence or approval of the districts' actions by the counties or cities included in the multi-county region. Thus, in my opinion, it cannot reasonably be concluded that the districts simply act for the counties and cities, i.e., as merely administrative arms of city or county government. See generally Adams v. Bryant, 236 Ark. 859, 370 S.W.2d 432 (1963) (holding that a light and water commission created by city ordinance was simply an agent of the city where its exercise of legislative authority required city council approval). The districts act, instead, as agents of the regions whose interests are affected. . . . They derive their authority from the legislature, not from the cities and counties. While it may be accurate to say that the elected officials on each district's board together represent local governmental interests, there is no distinct representation of any local unit of government. The board also represents economic development organizations and other organizations broadly representative of diverse community interests. . . . I do not believe it can be fairly stated in that instance that the board is a "token commission" or body created to evade art. 16, § 1. See Creviston, supra.
Op. Att'y Gen. 94-030 at 4-5 (emphasis in original). *Page 11 
It is my opinion that the state constitution does not prohibit the creation of energy efficiency improvement districts, but that a legislative drafter should consider all relevant provisions of the constitution including without limitation those discussed herein.
Question 2 — May the General Assembly give an energy efficiencydistrict's special assessments lien priority over mortgages?
You have not submitted a draft or detailed description of proposed legislation. Without language to consider, I cannot render an opinion that an energy efficiency improvement district assessment would necessarily even be secured by a lien, let alone that the lien would be prior to any other. Any enactment's effect will depend on its particular provisions. I can, however, discuss generally the legislature's authority.
"The State's right to levy and collect taxes for the support of government and to make its taxes a first lien on the property in the State cannot be questioned." Little Red River Levee Dist. No. 2 v.State, 185 Ark. 1170, 1174, 52 S.W.2d 46 (1932). But priority is not an automatic result of the state's creation of a lien: "No doubt the Legislature has the power to provide that the one or the other [improvement district lien] is prior, but, until it has done so in plain and unmistakable language, we do not feel that we should so hold."Board of Comm'rs of McKinney Bayou Drainage Dist., 181 Ark. at 906.
In Shibley v. Fort Smith Van Buren Dist.,96 Ark. 410, 132 S.W. 444 (1910), property owners challenged an act creating an improvement district arguing, among other things, that the act, in providing that the lien of the special assessment would be superior to the liens of prior mortgages, was an illegal impairment of existing contracts. The court rejected the argument, saying that the "question is well settled by the authorities against the contention" and that "the correct view is aptly stated, as follows:
 `Every property owner holds his property subject to the exercise of the taxing power, and it is immaterial, so far as this question is concerned, what may be the nature of his interest, whether the fee, an estate in expectancy, an estate for years, or a mere lien. This is true, as everyone must admit, in relation to general taxes where the only return to the *Page 12 
taxpayer is the protection and security which the government gives him, and, a fortiori, should be true in case of special assessments, where, in theory at least, he receives an adequate and complete return for the money assessed in the enhances value of the estate or property which he owns, or to which his lien attaches.'"
Id. at 422, quoting Wabash Eastern Ry. Co. v. Commissionersof East Lake Fork Special Drainage Dist.,134 Ill. 384, 25 N.E. 781 (1890). See also Giles v. Harrington,Miller, Nethouse Krug,362 Ark. 338, 343, 208 S.W.3d 197 (2005) (legal malpractice claim arising from lawyers' failure to inform clients "that the special [improvement district] tax lien would take first priority over their mortgage" failed due to absence of privity).
The General Assembly has ample authority, in my opinion, to make an energy efficiency improvement district's assessment lien prior to a mortgage lien.
Assistant Attorney General J. M. Barker prepared this opinion, which I approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] References in this opinion to a district's creation, or the like, include direct legislative action to create a district and legislative authorization of others to create districts, both of which are permitted in Arkansas. See Board of Improvement of Sewer ImprovementDist. No. 1, City of Fayetteville v. Pollard,98 Ark. 543, 136 S.W. 957 (1911). See also, e.g., Board of Comm'rs ofMcKinney Bayou Drainage Dist. v. Board of Dir. of Garland LeveeDist., 181 Ark. 898, 904, 28 S.W.2d 721 (1930) (liens of overlapping improvement districts, one created directly by the legislature and the other by a county under statutory authority, were on a parity of security).
[2] This work is now over 80 years old, but its utility endures. An Arkansas Supreme Court majority cited it as recently as 1994. SeeQuapaw Cent. Bus. Improvement Dist. v. Bond-Kinman, Inc.,315 Ark. 703, 705-706, 870 S.W.2d 390 (1994). It would be at least as useful to a legislative drafter as to a court.
[3] Any legislative power may be exercised only for a public purpose.See, e.g., Stuttgart Rice Mill Co. v. Crandall,203 Ark. 218, 157 S.W.2d 205 (1941); Cobb v. Parnell,183 Ark. 429, 36 S.W.2d 388 (1931). "It is elemental that taxes can only be levied for a public purpose. Indeed, there is no principle of constitutional law better settled than that taxes can not be levied for a private purpose." Id. at 447 (Hart, C.J., dissenting from the majority's conclusion that the tax at issue had been levied for a public purpose). While I have no particular reason to believe that a court would find a public purpose to be lacking in the case of energy efficiency improvement districts, a legislative expression of public purpose would likely be worthwhile.
[4] It has been stated more broadly that "[t]he Arkansas Constitution of 1874 contains provisions limiting the maximum rate of general property taxation by counties and municipalities, and prohibiting counties and municipalities from issuing interest-bearing certificates of indebtedness. . . . [T]hese constitutional restriction do not apply to improvement districts. . . ." Quapaw Cent. Bus. ImprovementDist., 315 Ark. at 706 (paraphrasing Sloan, supra). And "[i]t is settled law that Article 16 [of the state constitution] does not apply to assessments for improvement districts. Bensberg v. Parker,192 Ark. 908, 95 S.W.2d 892 (1936)." Eaton Roberts v. McCuen,273 Ark. 154, 157, 617 S.W.2d 341 (1981).
[5] Examples of constitutional challenges in the improvement assessments and districts context include, without limitation,Cherokee Village Homeowners Protective Assoc. v. Cherokee VillageRoad Street Improvement Dist. No. 1,248 Ark. 1055, 455 S.W.2d 93 (1970) (challenger unsuccessfully argued that an improvement district was a private entity and therefore the recipient of an unconstitutional delegation of legislative power, and that the legislation lacked a public purpose and therefore violated due process); Less Land Co. v. Fender,119 Ark. 20, 173 S.W. 407 (1915) (challenge based on Ark. Const. art. 2, § 23, failed, the court holding in essence that an assessment is not a tax within the meaning of that section); SaintLouis, I.M. S. Ry. v. Board of Dirs.,103 Ark. 127, 145 S.W.892 (1912) (challenge based on Ark. Const. art. 12, § 4, failed, the court holding that a levee district is not a municipality within the meaning of that section); Murphy v. Cook,202 Ark. 1069, 155 S.W.2d 330 (1941) (unsuccessful challenges based on Ark. Const. amend. 14 and the void-for-vagueness doctrine).
[6] See, e.g., Ark. Const. amend. 62, 65.
[7] See n. 4. *Page 1