WOOD v. HENDERSON.

5-744                                                    280 S. W. 2d 226

Opinion delivered June 13, 1955.

Rose, Meek, House, Barron & Nash, for appellant.

*Robert C. Downie,* for appellee.

ED. F. McFADDIN, Justice. The question presented is whether Act 115 of 1955 applies to a suburban improvement district organized under the provisions of § 20-701, *et seq.,* Ark. Stats. In considering the posed issue, we leave open any and all questions regarding the constitutionality of the Act 115. Constitutional questions are never decided unless necessary. *Porter* v. *Waterman,* 77 Ark. 383, 91 S. W. 754; *Honea* v. *Federal Land Bank of St. Louis,* 187 Ark. 619, 61 S. W. 2d 436; and *Winston* v. *Personal Finance,* 220 Ark. 580, 249 S. W. 2d 315.

The appellants are the Commissioners of Highway 67 Water Pipe Line Improvement District No. 25 (hereinafter called "District"), created by order of the Pulaski Chancery Court on January 3, 1955, pursuant to said § 20-701, *et seq.,* Ark. Stats. The District was created —as its name implies—to lay a water pipe line for use of suburban property owners. On April 20, 1955, appellee filed his complaint in the Pulaski Chancery Court, alleging: (1) that he was a property owner in the District and sued for himself and all other property owners; (2) that the District originally intended to issue $175,000.00 in bonds, which was sufficient to make the contemplated improvement; and (3) that after the passage of Act 115 of 1955 the Commissioners decided to increase the bond issue to $185,000.00 because the provisions of the Act will add $10,000.00 to the labor cost of the improvement. The complaint also alleged:

"Said Act 115 of 1955 is not applicable to the construction work to be done by said District. It is not a 'taxing agency' within the meaning of that phrase as used in said Act 115. On the contrary, it pays for the cost of the improvement by special assessments levied against the lands of the property owners in the District. The improvement which is to be made by the District does not come within the meaning of 'public buildings or public works' as used in said Act 115. On the contrary, the funds used for the construction work come solely

from the property owners in the District and the improvement is made, not for the benefit of the public but for the property owners who bear the cost thereof.''

The prayer of the complaint was that the Court find that the said Act 115 was not applicable to this improvement and that the District be empowered to issue only $175,000.00 of bonds. The answer stated that the Act 115 was applicable to the District and prayed that the complaint be dismissed.[1] The case was tried on facts stipulated substantially as hereinbefore stated; and resulted in a decree holding that the Act 115 was not applicable to the District. This appeal challenges that decree.

The Act 115 is captioned:

''An Act to provide for minimum prevailing wages to be paid on certain state, county, municipal or taxing agency, public construction or works; to repeal conflicting laws; to declare an emergency; and for other purposes.''[2]

Section 1 of the Act says:

''The advertised specifications for every contract to which the State of Arkansas, any county of this state, any city or town in this state, *or any taxing agency of this state,* or any of the agencies thereof, is a party, for construction  .  .  .  of public buildings or public works of the State of Arkansas, any of its counties, cities or towns, *or of any taxing agencies of this state except as herein provided*  .  .  .  shall contain a provision stating the minimum wages.  .  .  .''

Section 7 of the Act says:

''It is the purpose and intent of this Act to provide and prescribe and establish minimum prevailing wage scales on all public state, county, municipal *or taxing*

---

[1] Originally the Commissioner of Labor of Arkansas intervened to defend the Act; but has been allowed to withdraw after both sides agreed that the question of the constitutionality of the Act could be eliminated from the decree.

[2] The Legislative records show that the emergency clause received sufficient affirmative votes in each branch of the Legislature to make the Act effective immediately upon approval.

*agency buildings and works,* except as herein exempted.
. . ."[3]  (Italics our own.)

If the suburban improvement district here involved is a "taxing agency," then the Act applies. That is the point for decision.

Our method of making improvements, by the formation of districts which make assessments of benefits against the property for the improvement made, has long been recognized in legislative enactments and judicial decisions. A scholarly two-volume treatise was written by Honorable Horace Sloan of the Jonesboro Bar in 1928, entitled "The Law of Improvement Districts in Arkansas." In § 69 of that treatise, Mr. Sloan quoted Art. II, § 23 of our Constitution:

" 'The State's ancient right of eminent domain and of taxation is herein fully and expressly conceded; and the General Assembly may delegate the taxing power, with the necessary restriction, to the State's subordinate political and municipal corporations to the extent of providing for their existence, maintenance and well being, but no further.' "

Immediately following the above quotation, and in § 70 of his work, Mr. Sloan states the following as the rationale of our holdings:

"The words 'taxation' and 'the taxing power,' as employed in the foregoing provision, refer to general taxation only and not to local assessments. The words 'the State's subordinate political and municipal corporations' do not include districts (whether corporations or not) created for the special purpose of constructing or maintaining public improvements to be paid for by local assessments on the real property benefited, but do include counties and municipal corporations. Under these definitions there is no constitutional restriction to prevent the Legislature from delegating to an improvement district the power to fix and levy local assessments upon property specially and peculiarly benefited; but it can-

---

[3] Section 3 of the Act says that it does not apply to any highway, state or bridge construction.

not delegate to an improvement district any powers of general taxation.''

Our cases hold that a local improvement district is not a *taxing agency*. In *Whaley* v. *Northern Road Imp. Dist.,* 152 Ark. 573, 240 S. W. 1, 24 A. L. R. 934, we said:

''. . . a local improvement district is not a subordinate political agency of the State, but is merely a governmental agency created for the specific purpose of constructing or maintaining a local improvement. *Altheimer* v. *Board of Directors of Plum Bayou Levee District,* 79 Ark. 229. General powers of taxation cannot be delegated to such an agency, for, as we have already said, the only theory upon which taxation of any kind can be justified in the construction of local improvements is that benefits accrue corresponding in value with the cost of the improvement.''

Again, in *State* v. *Berry,* 158 Ark. 84, 249 S. W. 572, we said:

''Taking all of the provisions of this act together, it would be more appropriately classified as a delegation of power to improvement districts to lay a privilege tax than a delegation of power to the county. But it cannot be upheld as a delegation of power to improvement districts, for they do not constitute subordinate political agencies of the State for the purpose of taxation, under the Constitution, and are therefore not authorized to lay a tax of any kind.''

It is true that in some of our Statutes regarding improvement districts the Legislature has used the words ''tax'' and ''taxes'' in reference to annual payments of installments of benefits and interest;[4] but it is clear that in all such instances the words ''tax'' and ''taxes'' were intended to mean ''matured assessment of benefits and

---

[4] A few such instances may be noticed: in §§ 20-710 to 712, inclusive, Ark. Stats. (the suburban improvement district law here involved) the word "taxes" occurs several times; likewise in §§ 20-1120-1128, inclusive, in speaking of various kinds of districts, the word "taxes" occurs several times; and also in § 20-412 and in § 20-420 (the municipal improvement district law) the word "tax" and the word "taxes" occur several times.

interest due thereon." It would do violence to our entire theory of assessment of benefits of local improvement districts to allow these isolated instances of the loose use of the words "tax" and "taxes" to be seized on to support a claim that an improvement district levied a tax, particularly in view of the cases heretofore cited and the many cases in which this Court has repeatedly held to the contrary, some of which are: *Sanders* v. *Brown,* 65 Ark. 498, 47 S. W. 461; *Paving Dist. of Ft. Smith* v. *Sisters of Mercy,* 86 Ark. 109, 109 S. W. 1165; *Shibley* v. *Ft. Smith Dist.,* 96 Ark. 410, 132 S. W. 444; and *Lewis* v. *Delinquent Lands,* 182 Ark. 838, 33 S. W. 2d 379.

We therefore conclude that the Chancery Court was correct in holding that the district here involved is not a "taxing agency" within the purview of Act 115 of 1955.

Accordingly the decree is affirmed.

Justice George Rose Smith not participating.