QUAPAW CENTRAL BUSINESS IMPROVEMENT
DISTRICT *v.* BOND-KINMAN, INC.

93-234                                    870 S.W.2d 390

Supreme Court of Arkansas
Opinion delivered February 7, 1994

*Mitchell, Williams, Selig, Gates & Woodyard*, for appellant.

*Mike Wilson*, for appellee.

TOM GLAZE, Justice. Quapaw Central Business Improvement District was created by the Little Rock City Board of Directors for the purpose of providing funds to construct improvements to streets, sidewalks, utilities, curbs and gutters, street lighting, landscaping, and other improvements within the district. On December 1, 1988, Quapaw issued $700,000 in General Obligation Improvement Bonds, and to secure payment of the bonds, it levied a continuing annual assessment of 5% on the real property within its district. The assessments are to be collected by the Pulaski County Collector until the bonds are retired. Quapaw issued a pledge and mortgage wherein the Quapaw District pledged, mortgaged, assigned, and transferred to 1st National Bank of Texarkana, as Trustee for the registered owners of the bonds, the assessments collected and to be collected.

Bond-Kinman, Inc. was engaged as a general contractor to

construct the improvements, and at the end of the work, Quapaw failed to make its final payment to Bond-Kinman. Bond-Kinman then sued Quapaw in Pulaski County Circuit Court for breach of contract. Following trial on the merits, Bond-Kinman was awarded a net judgment of $44,076.60. Neither party appealed. Subsequently, Bond-Kinman learned the Pulaski County Collector was holding $55,110 on behalf of Quapaw, and in an attempt to satisfy the $44,076.60 judgment, it filed a garnishment action against the Collector. The Collector answered, admitting it was indebted to Quapaw in the amount of $55,110, and Quapaw responded, stating the funds held by the Collector were pledged and mortgaged for the Quapaw District's bondholders. Quapaw also moved Bond-Kinman's writ of garnishment should be dismissed.

Following a hearing, the circuit court denied Quapaw's motion to dismiss the garnishment, and granted Bond-Kinman judgment against the Collector from which Quapaw appeals. Bond-Kinman argued below, and now on appeal, that the pledge and mortgage made to the bondholders had not been properly perfected under Article 9 of the Uniform Commercial Code, thus, allowing the funds held by the Collector to be subject to Bond-Kinman's superior lien. Specifically, Bond-Kinman argues Quapaw's pledge and mortgage securing the assessments for the District's bondholders were required to be filed in the Office of the Secretary of State, and Quapaw's failure to do so, permitted Bond-Kinman's garnishment of the funds which were intended for the bondholders. We must disagree.

First, we disagree that Article 9 of the Code applies. Section 4-9-104(e) (Repl. 1991) excepts, from the operations of the Article, a transfer by a government or governmental subdivision or agency.[1] Thus, if the Quapaw District is a governmental subdivision or agency, Article 9 is inapplicable and Bond-Kinman's argument must fail.

In determining the status of improvement districts,

---

[1] The commentary to this UCC provision explains that because governmental borrowings and assignments are usually governed by special provisions of law, governmental transfers are excluded from this Article. Later in this opinion, we discuss such special provisions here which are a part of the Central Business Improvement District Act, Ark. Code Ann. §§ 14-184-101–130 (1987).

particularly in Arkansas, a historical review is helpful and is discussed by Horace Sloan in *A Treatise on the Law of Improvement Districts in Arkansas* (1928). The power of taxation, whether by general taxation or by local assessment, is legislative and cannot be exercised in absence of statutory authority. Additionally, no improvement district may be created or local assessment imposed unless statutorily authorized. The Arkansas Constitution of 1874 contains provisions limiting the maximum rate of general property taxation by counties and municipalities, and prohibiting counties and municipalities from issuing interest-bearing certificates of indebtedness. *See generally* Ark. Const. art. 16 as amended. Because these constitutional restrictions do not apply to improvement districts, the improvement district has been used in Arkansas as a means of constructing and financing large public improvements that counties and municipalities could not normally afford. Sloan at pp. 2 through 28.

As is clearly indicated from the foregoing, improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state, and "constitute a separate and distinct species of taxing districts as contradistinguished from counties, municipal corporations and school districts." *Id.* at p. 19. Further, there is a wealth of case law acknowledging the agency status of improvement districts as governmental in nature. *See Terry* v. *Starks*, 221 Ark. 870, 256 S.W.2d 545 (1953) (during the time lands are the property of an improvement district, such lands are held by a governmental agency and for governmental purposes); *Wood* v. *Henderson*, 225 Ark. 180, 280 S.W.2d 226 (1955) (improvement district is not a taxing agency or a subordinate political agency of the state, but is merely a governmental agency); *Reeme* v. *Natural Gas Improvement Dist. No. 2*, 247 Ark. 983, 448 S.W.2d 647 (1970) (improvement district is a political subdivision and quasi-public corporation created by the state); *Cherokee Village Homeowners Protective Assoc.* v. *Cherokee Village Road & Street Improvement Dist. No. 1*, 248 Ark. 1055, 455 S.W.2d 93 (1970) (improvement district lawfully created assumes the status of a de jure governmental agency).

Because an improvement district is an agent of the state, the Quapaw District is excluded under § 4-9-104(e) as a governmental agency from the UCC and its filing requirements.

Accordingly through the statutory lien created under §§ 14-184-120(b) and 14-184-127(b)(1), the bondholders' interest is secured and made superior by Quapaw District's prior pledge and mortgage of its assessments.[2]

The special statutory provisions providing for the lien on and the pledge of the district's assessments to secure payment of the bonds also disposes of Bond-Kinman's argument that the funds belonging to the Quapaw District were not restricted in any manner while in the possession of the Collector, thus making the assessments subject to garnishment. Bond-Kinman attempts to distinguish *Gossett* v. *Merchants & Planters Bank*, 235 Ark. 665, 361 S.W.2d 537 (1962), relied on by Quapaw, wherein this court held that a restricted deposit is not subject to diversion by garnishment or other process, but must be used for the purpose made. *See also Geyer & Adams Co.* v. *Bank of Central Ark.*, 170 Ark. 1016, 282 S.W. 358 (1926).

■ While Bond-Kinman may be correct in stating that the Collector had not placed the District's pledged funds into a restricted account, the Collector's failure to do so is not determinative. Again, by statute, the levy of assessments is restricted to the payment of the bonds under §§ 14-184-120 and 14-184-127. And in accordance with those statutory pledge, security and lien provisions, the language of the bond, itself, restricts the assessment of benefits and taxes pledged to the payment of the bonds.[3] Statutory authorization allowing for the levy and collection of assessed funds, and statutorily mandated language found on the bond control the disposition of any funds collected under the Act.

■ As a final point, we take note of Bond-Kinman's

---

[2]Section 14-184-127(b)(1) provides:

> The principal of, interest on, and paying agent's fees in connection with the bonds shall be secured by a lien on and pledge of, and shall be payable from, the assessments levied against the real property within the district or the revenues derived from the operation of revenue-producing facilities of the district including, without limitation, lease rentals as provided for in this subchapter, constructed or acquired under the provisions of this subchapter.

[3]The bond language here does reserve to the District's Board of Commissioners the right to pay the District's reasonable and necessary expenses after payment of the bonds.

argument that the Quapaw District is not a real party in interest because the funds Bond-Kinman attempts to garnish are held by the Collector for the benefit of the bondholders. Thus, under Bond-Kinman's argument, the Collector and the Trustee for the bondholders are the real parties in interest.[4] Quapaw points out that Bond-Kinman did not argue this point below and Bond-Kinman does not dispute this. Whether the issue was raised below or not, Bond-Kinman failed to obtain a ruling on the standing issue and matters left unresolved below are waived. *Morgan* v. *Neuse*, 314 Ark. 4, 857 S.W.2d 826 (1993). In addition, Bond-Kinman prosecuted this action, and if the Collector and the Trustee for the bondholders should have been parties, Bond-Kinman could have made them parties but chose not to do so.

For the reasons cited, we reverse and dismiss.

BROWN, J., dissents.

ROBERT L. BROWN, Justice, dissenting. The issue in this case is whether an unpaid contractor which constructed the improvements and is a judgment creditor has the right to garnish improvement district assessments collected and held by the county collector. Stated another way, who takes priority to such funds between this contractor with a garnishment lien and the bondholders who claim a prior lien? The opinion says the bondholders have a superior right to the funds but cites no authority to support its holding. I disagree, at least based on what has been presented to this court in this appeal.

The opinion is correct that Article 9 of the Uniform Commercial Code does not control this matter. The question is what does. The Improvement District argues that the Central Business Improvement District Act (Ark. Code Ann. § 14-184-101, *et.seq.* (1987) decides the issue, and the majority apparently agrees. But the sections of the Improvement District Act, which are adduced in the opinion, do not decide the priority question. *See* Ark. Code Ann. §§ 14-184-120, 14-184-127 (1987). Both sections provide that assessments from the properties benefited by the improvements shall be security for the bondholders and that

---

[4]The Collector was, of course, a party to the garnishment action. While the Collector responded to Bond-Kinman's request for a writ of garnishment, it did not appeal the trial court's decision granting the writ.

a lien is created. Neither statute, however, decides the conflicting claims question before the court today.

The opinion also concludes that the bond documents restrict the assessed funds. Those documents, however, are not before the court because they were not abstracted by the Improvement District, and this court has made it clear that we will not scour the record for evidence to reverse the trial court. *Montgomery* v. *Butler*, 309 Ark. 491, 834 S.W.2d 148 (1992); *Boren* v. *Qualls*, 284 Ark. 65, 680 S.W.2d 82 (1984). Moreover, the opinion is merely conclusive in stating that the bond language is restrictive. No doubt the bond documents provide that special property assessments will be used to pay off the bonds. But it does not necessarily follow that the funds held by the county collector are impervious to a contractor's lien. In short, the issue still remains of whether assessments held by the county collector can be garnished by the builder of the improvements that benefited the assessed properties.

The circuit court, in its judgment, did not rely on Article 9 of the Uniform Commercial Code. Rather, it focused on the inherent injustice created by prohibiting the Improvement District contractor, which built the improvements, from collecting on its judgment. Again, the majority opinion in this case does not resolve the issue of the conflicting liens but only refers to the statutes which state that the bondholders have a lien. In addition, this court does not know precisely what the assessments collected by the county collector are for. The contractor contends that the assessments in the collector's hands may be for administrative expenses of the Improvement District or operation and maintenance expenses. Hence, we do not know how those assessments are restricted, if at all, under the bond documents; when the assessments were paid; or when the pledge and mortgage lien attaches to the assessments. We are making this decision in the dark.

No doubt the security of the bondholders must be protected. However, without a more cogent and persuasive legal or factual basis to reverse the circuit court, I would affirm its judgment.