The Honorable Cliff Hoofman State Senator P.O. Box 1038 North Little Rock, AR 72115-1038
Dear Senator Hoofman:
I am writing in response to your request for my opinion on several questions raised by the Chairman of the Board of Commissioners of Maumelle Suburban Improvement District No. 500 (the "District"). The Chairman reports that the District proposes to contract "for the purchase and installation of `Radio Read' water meters to replace all of the District's existing 5,000 water meters (approximate) for a cost anticipated to be in excess of $1,500,000.00." In light of these plans, the District seeks my opinion on the following:
 1. Would a contract such as that proposed by the District for the purchase and installation of "Radio Read" water meters constitute a contract governed by A.C.A. § 22-9-203 or would it constitute a contract governed by the Arkansas Procurement Law codified as A.C.A. § 19-11-201 et seq.?
 2. If the contract proposed by the District is not governed by either of the foregoing statutes, is the District free to enter into such a contract without the solicitation and taking of competitive bids?
RESPONSE
With respect to your first question, I believe a court would in all likelihood conclude that the proposed contract would be subject to the competitive bidding requirement referenced in A.C.A. § 22-9-203 (Repl. 1996 Supp. 2001), not to the alternative competitive bidding requirement set forth in the Arkansas Procurement Law, A.C.A. § 19-11-201et seq. (Repl. 1998 Supp. 2001). Given this response, your second question is moot.
Question 1: Would a contract such as that proposed by the District forthe purchase and installation of "Radio Read" water meters constitute acontract governed by A.C.A. § 22-9-203 or would it constitute a contractgoverned by the Arkansas Procurement Law codified as A.C.A. § 19-11-201et seq.?
Subsection 22-9-203 of the Arkansas Code (Repl. 1996 Supp. 2001) provides in pertinent part:
 No contract providing for the making of major repairs or alterations,
for the erection of buildings or other structures, or for making other permanent improvements shall be entered into by the state or any agency thereof, any county, municipality, school district or other local taxing unit with any contractor in instances where all estimated costs of the work shall exceed the sum of twenty thousand dollars unless [the entity invites competitive bidding as specified].
(Emphasis added.) Under this statute, the District will be obligated to solicit competitive bids for the proposed purchase and installation under two conditions: (1) if the contract might be characterized as one for major repairs, alterations or permanent improvements; and (2) if the District qualifies either as an agency of the state or as a local taxing unit.
With respect to the first of these conditions, although the question is ultimately one of fact, I strongly suspect a court would conclude that a $1.5 million contract for the installation of water meters in the District qualifies as a "major" alteration and improvement to the District's water facilities. Insofar as the meters comprise integral components of the District's infrastructure, I further suspect a court would classify these improvements as "permanent."
With respect to the second condition, a suburban improvement district is a statutorily authorized local taxing unit. A.C.A. §§ 14-92-220(c) and — 228 (Repl. 1998). Moreover, as the Arkansas Supreme Court noted in QuapawCentral Business Improvement District v. Bond-Kinman, Inc.,315 Ark. 703, 706, 870 S.W.2d 390 (1994):
 Improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state, and" constitute a separate and distinct species of taxing districts as contradistinguished from counties, municipal corporations and school districts.". . . Further, there is a wealth of case law acknowledging the agency status of improvement districts as governmental in nature.
(Citations omitted.) Moreover, A.C.A. § 22-9-205 expressly includes the category of "improvement district" among the entities that might enter into a contract subject to the provisions of A.C.A. § 22-9-203. Accordingly, given that the circumstances you describe appear to meet both prongs of this test, I believe a court would conclude that the competitive bidding requirement set forth at A.C.A. § 22-9-203 would apply to the proposed contract at issue.
By contrast, I doubt a court would conclude that the proposed contract is subject to the conditions set forth in the Arkansas Procurement Law, A.C.A. § 19-11-201 et seq. (Repl. 1998 Supp. 2001). The Arkansas Procurement Law regulates contracts and purchases made by "state agencies" — a term defined as follows at A.C.A. § 19-11-203(30(A):
 "State agency" means any office, department, commission, council, board, bureau, committee, institution, legislative body, agency, government corporation, or other establishment or official of the executive, judicial, or legislative branch of this state, except exempt agencies in their procurement of items not subject to Arkansas Constitution, Amendment 54.
(Emphasis added.) As reflected in the highlighted passage, a "state agency" under the Arkansas Procurement Law must be an agency of one of the three branches of state government — a description I doubt would apply to a distinctively local entity like a suburban improvement district, regardless of whether one characterizes the district as an "agent" of the state in exercising its taxing power.
Question 2: If the contract proposed by the District is not governed byeither of the foregoing statutes, is the District Free to enter into sucha contract without the solicitation and taking of competitive bids?
This question is moot in light of my response to your previous question.
Assistant Attorney General Jack Druff prepared the foregoing, which I hereby approve.
Sincerely,
MARK PRYOR Attorney General
MP:JD/cyh