The Honorable Boyd Hickinbotham State Representative P.O. Box 326 Salem, Arkansas 72576-0326
Dear Representative Hickinbotham:
I am writing in response to your request for my opinion on the following question, which you have submitted on behalf of the City of Briarcliff:
 Can the Briarcliff Improvement District waive delinquent assessments on lands which have gone back to the state?
In support of this request, the mayor has submitted to you the following correspondence:
 As the Briarcliff Improvement District was formed under Chapter 92 as a Suburban Improvement District and not a Special Improvement District and does not issue any bonds or have any debts.
And:
 Since the Briarcliff Improvement District was created, the City of Briarcliff was incorporated in 1998 to create a tax base which will lead to the elimination of the Improvement District and its annual assessments for road, water, and recreation upkeep. The Improvement District working with the City, wishes to waive all special assessments on lands which have gone back to the State, provided they are not redeemed by the original owners. This would allow lots (many hundreds) to get back on the tax rolls at reasonable redemption rates by the state.
 After consulting with the state land Commissioner we are putting fourth [sic] a request for your review that, in order to facilitate sales of these delinquent lands in order to get them back on the tax rolls, the City and Improvement District need an opinion from your office allowing a waiver of these past assessments to have on file with the State Land Commissioner's office, as well as the Baxter County assessor and Collector's office, and Briarcliff offices.
 As the Improvement District has issues [sic] no bonds and incurred no debts, we would to refer to Attorney General's opinion 88-204 stating that the Land Commissioner is not obligated to collect Improvement District assessments in connection with a sale by the State to a third party.
RESPONSE
In my opinion, the Briarcliff Improvement District cannot waive delinquent assessments in the manner proposed.
As my predecessor noted in Ark. Op. Att'y Gen. No. 2002-063:
 [A] suburban improvement district is a statutorily authorized local taxing unit. A.C.A. §§ 14-92-220(c) and -228 (Repl. 1998). Moreover, as the Arkansas Supreme Court noted in Quapaw Central Business Improvement District v. Bond-Kinman, Inc., 315 Ark. 703, 706, 870 S.W.2d 390
(1994):
 Improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state, and "constitute a separate and distinct species of taxing districts as contradistinguished from counties, municipal corporations and school districts.". . . Further, there is a wealth of case law acknowledging the agency status of improvement districts as governmental in nature.
(Citations omitted.)
Subsection 14-92-228(b) of the Code provides:
 The tax so levied shall be a lien upon all the real property in the district from the time it is levied and shall be entitled to preference over all demands, executions, encumbrances, or liens, whensoever created, and shall continue until the assessment, with any penalty costs that may accrue thereon, shall have been paid.
Subsection 14-92-232(b) of the Code provides:
 Delinquent suburban improvement district assessments shall be held by the county collector, and, if not redeemed, the assessments shall be certified to the Commissioner of State Lands for redemption or sale, pursuant to Act 626 of 1983, as amended.
I assume this is the statutory procedure to which the mayor of Briarcliff referred in describing "lands which have gone back to the State."[1]
In the attached Ark. Op. Att'y Gen. No. 2001-266, with which I fully concur, my predecessor offered the following regarding the forgiveness of delinquent assessments by a municipal improvement district:
 With respect to the priority of a municipal improvement district lien for assessments, A.C.A. § 14-90-805 provides in pertinent part:
 (a) An assessment shall be a charge and a lien against all the real property in a municipal improvement district from the date of an ordinance and shall be entitled to preference over all judgments, executions, encumbrances, or liens whenever created.
 (b) The lien shall continue until the local assessment, including any penalty and costs that may accrue thereon, shall be paid. Provided, however, with the prior written approval of the board of improvement, the county clerk shall release from the lien of any assessment any lot, block, or tract with respect to which the assessment shall have been paid or prepaid.
 Applying this principle to road improvement district special assessments, the Arkansas Supreme Court has offered the following summation:
 The tax so levied shall be a lien upon all the real property in the district from the time same is levied by the county court, and shall be entitled to preference over all demands, executions, encumbrances or liens whatsoever created, and shall continue until such assessments, with penalty and costs that may accrue thereon, have been paid.
 Turley v. St. Francis County Road Improvement District No. 4, 171 Ark. 939, 939, 287 S.W. 196 (1926). Although the court acknowledged that the statutory language "all demands, executions, encumbrances or liens whatsoever created" did not refer to the State's paramount tax lien, it did declare that pursuant to the statute, "the special taxes of the improvement district shall continue until fully paid, and are not extinguished." Id. at 942.
In commenting on Turley, one of my predecessors observed:
 A review of statutory provisions governing the various types of improvement districts reveals language similar to that cited in the Turley case, supra, with respect to the district's lien for taxes. See, e.g., A.C.A. 14-90-805, 14-92-228, 14-93-119 and 14-123-409 with respect to municipal improvement districts, suburban improvement districts, property owners' improvement districts, and levee improvements districts, respectively.
 It thus seems clear that while the State is not required to discharge improvement district tax liens, an improvement district does not lose its lien because of certification of the lands to the State.[2]
Rather, the special improvement district lien may be enforced when the land returns to private ownership. See, e.g., Harris v. Little Red River Levee Dist. No. 2, 188 Ark. 976 [188 Ark. 975], 69 S.W.2d 877
(1934); Terry v. Drainage District No. 6, Miller County, 206 Ark. 940, 178 S.W.2d 857 (1943); Spikes v. Beloate, 206 Ark. 344, 175 S.W.2d 579
(1943). The court in Harris v. Little Red River, supra, at 978-979, expressed this precept as follows:
 The decree of confirmation does not relieve the purchaser from the State of payment of assessments because the sale to the State does not extinguish the lien. . . . [I]t is the duty of the purchaser to pay the districts' special improvement taxes in order to extinguish the liens of the districts for the payment thereof. . . .
Ark. Op. Att'y Gen. No. 88-204.
Opinion 2001-266, at 2-4.
In my opinion, a claim for delinquent assessments is properly described as an asset of an improvement district. Subsection 14-92-237(c) of the Code provides as follows for the disposition of district assets upon dissolution, which is what you report is planned in Briarcliff:
 (1) In the event the commissioners vote to dissolve the district or the district is dissolved by vote of the realty owners at a public hearing, the board shall convert all assets into cash and shall first pay from such surplus funds all debts of the district, including any reasonable legal and other expenses incurred in connection with the dissolution.
 (2)(A) The commissioners then shall refund all remaining funds of the district, pro rata, to the property owners who hold title to the property in the district at the time the refund is made.
 (B)(i) The pro rata refund to the property owners shall be made on the basis of the most recent assessment or reassessment of benefits on the parcels of property prior to dissolution and shall be in the same proportion that the assessed benefits of each individual parcel of property bears to the total of the assessed benefits of all the property in the district.
 (ii) No property or owner whose property is delinquent in any sum for district assessments, penalties, or interest, at the time the refund is made shall be counted in calculating the pro rata distribution, or receive any portion of the refund.
 (C) Within ninety (90) days after the distribution of the surplus funds has been completed, the board shall file a copy of the resolution of dissolution and a financial statement of the district, verified by all commissioners, in the office of the county clerk in the county in which the district is located.
In Ark. Op. Att'y Gen. No. 98-070, my predecessor characterized this statute as follows:
 A procedure is provided for the conversion of all assets of the district into cash, the payment of all indebtedness, and a pro rata refund to the property owners. A.C.A. § 14-92-237(c). The procedure may or may not be available immediately upon dissolution, depending upon the status of the project, the cash on hand, the bond issue, and any applicable trust indenture securing the bonds.
Nothing contained in either this statute or the recitation of board powers set forth at A.C.A. §§ 14-92-210 and -220 even remotely suggests that the commissioners might forgive debt owed the district in order to benefit the tax rolls of an entirely different political subdivision. In my opinion, it is immaterial that the district has issued no bonds and incurred no debts. The statute is unequivocal in declaring that any assets must be liquidated and distributed on a pro rata basis, not forgiven. Although I appreciate that this might create certain practical difficulties, I am obliged to interpret the law as it is written.
Finally, I feel obliged to address the mayor's paraphrase of Ark. Op. Att'y Gen. No. 88-204 as declaring: "[T]he Land Commissioner is not obligated to collect Improvement District assessments in connection with a sale by the State to a third party." I believe my predecessor's opinion is summarized in the following excerpt:
 With respect to improvement district special assessments, there is Arkansas case law authority for the proposition that special improvement district taxes are not extinguished following certification of the lands to the State for non-payment of general taxes.
I assume the mayor's paraphrase is based upon the following sentence from my predecessor's opinion: "It thus seems clear that while the State is not required to discharge improvement district tax liens, an improvement district does not lose its lien because of certification of the lands to the State." In my opinion, this sentence merely acknowledges that when the state takes title to property because of a delinquency in general taxes, it is not obliged to pay any delinquent improvement district assessments on the property. However, the law clearly provides that if the State conveys the property to a third party, the conveyance will be subject to a lien for those assessments.
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB/JHD:cyh
Enclosure
[1] As a general matter, delinquent assessments in suburban improvement districts are certified to the Commissioner of State Lands, unless the district has chosen to enforce collection by chancery proceedings pursuant to § 14-92-232(c), in which case A.C.A. § 14-94-122 will govern the procedural requirements. However, A.C.A. §§ 14-92-601 to -603 must also be considered in this regard. These sections apply to "eligible" suburban improvement districts "organized and existing pursuant to the provisions of § 14-92-201 et seq. with an area of not less than five thousand (5,000) acres and not more than seven thousand (7,000) acres." A.C.A. § 14-92-601. Such districts may elect to collect their own assessments, in which case they will also be responsible for collecting delinquencies. A.C.A. §§ 14-92-602 and -603(a). Even if they have not elected to do their own collection, they may nevertheless elect, by resolution, to collect their own delinquent assessments. A.C.A. §14-92-603(b).
[2] The law regarding forfeiture of property to the state for failure to pay property taxes is set forth in chapter 37 of title 26 of the Arkansas Code. In Ark. Op. Att'y Gen. No. 2001-097, my predecessor reviewed the somewhat thorny issue of who actually owns the property during the course of forfeiture and redemption under the Code. As another of my predecessors acknowledged in Opinion No. 88-204, the Land Commissioner is indeed not obligated to collect improvement district assessments in connection with a sale by the state to a third party.