The Honorable Randy Laverty State Senator Post Office Box 303 Jasper, AR 72641-0303
Dear Senator Laverty:
I am writing in response to your request for my opinion concerning the authority granted to suburban improvement districts. You have asked:
 1. Does a suburban improvement district have the authority to promulgate rules and regulations, impose penalties, enter into litigation or otherwise take official action with respect to:
Residential or commercial building permits;
 Inspection of residential and commercial structures for the purpose of ascertaining whether building standards have been met;
 Eliminating or otherwise acting against residential or commercial nuisance, such as trash, appearance of property or improper storage of vehicles;
 Development or enforcement of community standards for planning and/or zoning[?]
 2. Can funds collected to accomplish the regular business of a suburban improvement district be legally expended for any of these purposes?
RESPONSE
It is my opinion that the answer to both of these questions is generally "no" regarding rules and regulations and penalties in connection with the matters enumerated under your first question. Similarly, with respect to "litigation" or other "official action," the answer to both questions is generally "no" in my opinion as regards litigation or other action to enforce any such rules and regulations or penalties purportedly promulgated or imposed by a suburban improvement district.
These conclusions are compelled, in my opinion, by the fact that a suburban improvement district lacks the so-called "police powers" that would enable it to adopt rules and regulations, set penalties, institute litigation, and take other official action with respect to building permits and inspections, nuisance abatement, and planning and zoning.
The Arkansas Supreme Court has stated the following in addressing the status of improvement districts:
 Improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state, and `constitute a separate and distinct species of taxing districts as contradistinguished from counties, municipal corporations and school districts.'
Quapaw Central Business Improvement District v. Bond-Kinman, Inc.,315 Ark. 703, 706, 870 S.W.2d 390 (1994) (citation omitted).
The court has further described improvement districts as "inferior" to "municipal corporations" because they "lack the broad legislative, judicial, and political powers that are essential to administering local government." Memphis Trust Co. v. St. Francis Levee Dist., 69 Ark. 284,286, 62 S.W. 902 (1901) (quoting a Missouri case where the court said that the term "municipal corporation" included only cities, towns and other like organizations with political and legislative powers for the local government and police regulation of the inhabitants thereof). Seealso Nakdimen v. Bridge District, 115 Ark. 119, 121, 172 S.W. 272 (1914) (stating that an improvement district is not a municipality and its powers cannot be likened to those of municipal corporations, "whose powers are broader and more general within their prescribed territory and over the subjects delegated to them.")
It is my opinion that this distinction between improvement districts and municipal corporations is determinative for purposes of your questions. The matters proposed under your first question for action by a suburban improvement district involve the exercise of the government's sovereign right to secure the public health and safety, often referred to as the "police power." See, e.g., Smith v. City Of Arkadelphia, 336 Ark. 42,46-47, 984 S.W.2d 392 (1999), citing Phillips v. Town of Oak Grove,333 Ark. 183, 189, 968 S.W.2d 600 (1998) (regarding a city's "plenary authority to exercise its police power to protect public health and safety which is founded on public necessity.") The police power of cities is founded, generally, upon A.C.A. § 14-55-102, which provides:
 Municipal corporations shall have power to make and publish bylaws and ordinances, not inconsistent with the laws of this state, which, as to them, shall seem necessary to provide for the safety, preserve the health, promote the prosperity, and improve the morals, order, comfort, and convenience of such corporations and the inhabitants thereof.
Additionally, a city has specific planning and zoning authority pursuant to A.C.A. § 14-56-401 et seq., under which it might also take official action concerning the matters you have outlined.
Counties are similarly authorized by statute to "[p]reserve peace and order and secure freedom from dangerous or noxious activities." A.C.A. §14-14-801(3). Additionally, they may initiate their own planning and zoning laws. See A.C.A. §§ 14-14-802(b)(2)(B)(iv) and -807(4), and14-17-203(f) and -209.
Unlike cities and counties, however, suburban improvement districts have no general police powers. Such powers are conferred solely by state enabling legislation. Cf. Osborne v. City of Camden, 301 Ark. 420, 421,784 S.W.2d 596 (1990) (regarding municipal zoning authority). The body of the law under which a suburban improvement district may be organized (A.C.A. §§ 14-92-201 to -240 (Repl. 1998, Supp. 2003 and Acts 2005, No. 927)) includes no provision similar to those cited above giving cities and counties the power to secure the health and safety of their residents. Nor is there any specific grant of authority to engage in planning and zoning. It is well-established, moreover, that an improvement district's powers are limited to those that are statutorily authorized. This principle has been expressed by the Arkansas Supreme Court as follows:
 This court has repeatedly held that an improvement district can exercise only such powers as it is authorized by statute to exercise; that is, those necessarily or fairly implied, or incident to the powers expressly granted.
Page v. Highway 10, Water Pipe Line Improvement District No. 1,201 Ark. 512, 515, 145 S.W.2d 344 (1940).
I recognize in this regard that suburban improvement districts have been given broad authority to preserve, operate and maintain their improvements and facilities.[1] See A.C.A. §§ 14-92-210, -220, and -239 (Repl. 1998). See also generally Op. Att'y Gen. 2001-179. I believe it is clear, however, that their powers are not so extensive as to include those necessary to regulate in the areas you have identified. To conclude otherwise would, in essence, liken a suburban improvement district's powers to those of a city or county, contrary to the judicially recognized distinction between these entities. As discussed above, the court clearly views municipal corporations as the only entities created with broad powers essential for the "local government and police regulation of [their] inhabitants." Memphis Trust Co. v. St. Francis Levee Dist.,69 Ark. 284, 286, 62 S.W. 902 (1901), supra.
In conclusion, therefore, because there is no statutory foundation for a suburban improvement district's exercise of general police power or specific planning and/or zoning authority, the answer to both of your questions is "no" in my opinion.
Assistant Attorney General Elisabeth A. Walker prepared the foregoing opinion, which I hereby approve.
Sincerely,
MIKE BEEBE Attorney General
MB:EAW/cyh
[1] Such districts may be organized to provide waterworks systems, sewage systems, solid waste management system, streets and roads, recreational facilities, sidewalks, gas pipelines, telephone lines, rural fire departments, hospitals and ambulance services and libraries. See
A.C.A. § 14-92-219 (Acts 2005, No. 927).