The Honorable Roy Ragland State Representative Post Office Box 610 Marshall, Arkansas 72650-0610
Dear Representative Ragland:
I am writing in response to your request for my opinion on the following questions:
 1. Is a private water association obligated to terminate the water service of delinquent Marble Falls Water, Sewer Solid Waste Suburban Improvement District No. 1 sewer customers?
 2. Is a suburban improvement district, specifically a sewer system, a municipality for purposes of A.C.A. 14-229-103?
 3. Can a public sewer service in an unincorporated portion of Newton County require a private water association to terminate service for nonpayment of a sewer bill?
RESPONSE
Question 1: Is a private water association obligated to terminatethe water service of delinquent Marble Falls Water, Sewer Solid WasteSuburban Improvement District No. 1 sewer customers?
As I understand your question, you are concerned whether a suburban improvement district has the authority to mandate that a private water association terminate water service to a customer who has failed to pay his or her sewer bill. In my opinion, the answer to this question is "no." *Page 2 
As I noted in Op. Att'y Gen. No. 2009-055:
 It is well-established that an improvement district's powers are limited to those that are statutorily authorized. Page v. Highway 10, Water Pipe Line Improvement District No. 1, 201 Ark. 512, 145 S.W.2d 344 (1940). See also Quapaw Central Business Improvement District v. Bond-Kinman, Inc., 315 Ark. 703, 706, 870 S.W.2d 390 (noting that improvement districts are "agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state. . . .")
The pertinent law with respect to suburban improvement districts is set forth at A.C.A. § 14-92-101 through-240 (Repl. 1998 Supp. 2009).[1]
Nothing in this subchapter or in Act 41 of 1941, see
note 1, supra, authorizes a suburban improvement district to mandate that a private water association cut off water services to a customer merely because the customer is delinquent on his or her sewer bill.
I am aware of A.C.A. § 14-229-103 (Supp. 2009), which, as explained in my response to your second question, authorizes a municipality owning or operating a public sewer system or sewer improvement district to direct a water association, water improvement district or water authority to terminate water services unless a delinquent sewer bill is paid. However, a suburban improvement district is not a *Page 3 
municipality, [2] and its regulatory authority is consequently significantly curtailed. As my predecessor observed in Op. Att'y Gen. No. 2005-132:
 Unlike cities and counties . . ., suburban improvement districts have no general police powers. Such powers are conferred solely by state enabling legislation. Cf. Osborne v. City of Camden, 301 Ark. 420, 421, 784 S.W.2d 596 (1990) (regarding municipal zoning authority). The body of the law under which a suburban improvement district may be organized . . . includes no provision similar to those . . . giving cities and counties the power to secure the health and safety of their residents. . . . It is well-established, moreover, that an improvement district's powers are limited to those that are statutorily authorized. This principle has been expressed by the Arkansas Supreme Court as follows:
 This court has repeatedly held that an improvement district can exercise only such powers as it is authorized by statute to exercise; that is, those necessarily or fairly implied, or incident to the powers expressly granted.
 Page v. Highway 10, Water Pipe Line Improvement District No. 1, 201 Ark. 512, 515, 145 S.W.2d 344 (1940).
As further noted in Op. Att'y Gen. No. 2005-132:
 The Arkansas Supreme Court has stated the following in addressing the status of improvement districts:
 Improvement districts are agents of the state and derive their limited powers and duties of a public nature by legislative delegation through the taxing power of the state, and "constitute a separate and distinct species of taxing districts as contradistinguished from counties, municipal corporations and school districts." *Page 4 
 Quapaw Central Business Improvement District v. Bond-Kinman, Inc., 315 Ark. 703, 706, 870 S.W.2d 390 (1994) (citation omitted).
 The court has further described improvement districts as "inferior" to "municipal corporations" because they "lack the broad legislative, judicial, and political powers that are essential to administering local government." Memphis Trust Co. v. St. Francis Levee Dist., 69 Ark. 284, 286, 62 S.W. 902 (1901) (quoting a Missouri case where the court said that the term "municipal corporation" included only cities, towns and other like organizations with political and legislative powers for the local government and police regulation of the inhabitants thereof). See also Nakdimen v. Bridge District, 115 Ark. 119, 121, 172 S.W. 272 (1914) (stating that an improvement district is not a municipality and its powers cannot be likened to those of municipal corporations, "whose powers are broader and more general within their prescribed territory and over the subjects delegated to them.")
Given the express terms of A.C.A. § 14-229-103 restricting to municipalities the authority to disconnect water service as a result of failure to pay for sewer service, I do not believe it is warranted to extend to an improvement district, which is not a municipality, this power to dictate that water services be terminated. In my opinion, this conclusion follows from the fundamental principle of statutory construction known as expressio unius est exclusio alterius, which provides that the statutory designation of one thing may properly be construed to mean the exclusion of another. Chem-Ash, Inc. v. ArkansasPower Light Co., 296 Ark. 83, 751 S.W.2d 353 (1988); Venhaus v.Hale, 281 Ark. 390, 663 S.W.2d 930 (1946).
Question 2: Is a suburban improvement district, specifically asewer system, a municipality for purposes of A.C.A. 14-229-103?
In my opinion, the answer to this question is "no."
Section 14-229-103 of the Arkansas Code (Supp. 2009) provides as follows:
 (a) A municipality owning or operating a public sewer system or sewer improvement district that provides sewer service to its citizens may request a water association, a water improvement district, or a *Page 5 
water authority that provides the water service to terminate the water service to a resident who is delinquent at least thirty (30) days in making payment to the municipality for sewer service or solid waste service.
 (b) The water association, water improvement district, or water authority shall send notice to a person who is delinquent in making payments for sewer service or solid waste service of the date the water service will be terminated and shall terminate the water service upon that date unless the balance due the municipality for sewer service or solid waste service is paid.
 (c) The water association, water improvement district, or water authority shall terminate the water service upon certification by the municipality that the person:
 (1) Is more than thirty (30) days delinquent in making payments for sewer service or solid waste service; and
 (2) Has been sent notice of the termination of the water service as required under subsection (b) of this section.
 (d) As used in this section, "water authority" means the public body politic and governmental entity organized under the Water Authority Act, § 4-35-101 et seq.
As noted in my response to your previous question, a suburban improvement district is not a "municipality" in the sense of that term as used in subsection (a) of the above statute. Nor is a non-municipal sewer system that serves only the members of an improvement district "public" in the sense used in the statute.
Question 3: Can a public sewer service in an unincorporatedportion of Newton County require a private water association toterminate service for nonpayment of a sewer bill?
It is unclear what you mean by the phrase "a public sewer service in an unincorporated portion of Newton County." As reflected in the statute recited in my response to your previous question, a municipality — i.e., a truly "public" entity — may require a "water association," apparently irrespective of whether or not it is *Page 6 
"private," to terminate water service if a sewer bill is delinquent. However, as indicated in my previous responses, I do not consider an improvement district "public" in the sense that your question suggests.[3] Accordingly, if your question refers to the sewer services provided by the District, I believe the answer to your question is "no."
Assistant Attorney General Jack Druff prepared the foregoing opinion, which I hereby approve.
Sincerely,
DUSTIN McDANIEL Attorney General
[1] The applicability in all respects of this subchapter is qualified by A.C.A. § 14-92-202(a) (Repl. 1998), which provides as follows:
 The provisions of Acts 1981, No. 510, shall not apply to districts in existence on March 16, 1981, and these districts shall continue to be governed by the law in effect immediately prior to that date.
My inquiries reveal that the Marble Falls Water, Sewer Solid Waste Suburban Improvement District No. 1 (the "District") was formed in 1973, rendering this qualification applicable. The controlling law is consequently that set forth in Acts 1941, No. 41, which contains no provision authorizing an improvement district to mandate that water services be cut off for failure to pay a sewer bill.
Chapter 93, title 14 of the Code, as amended by Acts 1999, No. 475, § 1, also authorizes the formation of property owners' improvement districts. Prior to the enactment of the just referenced amendment, ownership of the real property in the district was limited to 25 or fewer persons. My inquiries suggest that this chapter does not apply to the District, which, again, was reportedly formed prior to the 1999 amendment and which includes more than 25 members.
[2] Section 14-92-221 (Repl. 1998) defines a suburban improvement district as "a body corporate" — an entity distinct from a municipal corporation.
[3] In this regard, I will echo the conclusion I reached in Opinion No. 2008-028:
 A direct and express grant of authority will allow a municipality to have a separate public utility discontinue service for a separate utility because of an individual's failure to pay the municipality for the municipal service. This was the conclusion of Op. Att'y Gen. 2006-206, in which my immediate predecessor noted that the express language of A.C.A. § 14-229-103 (Repl. 1998) authorized a municipal sewer system to require a rural water provider to discontinue sewer service to a delinquent municipal customer.
No such express grant has been extended to suburban improvement districts.